## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARC A. STEPHENS,<br>Plaintiff,<br>v.<br><br>THE HON. EDWARD A. JEREJIAN, in his<br>Official Capacity as Judge of the Superior<br>Court of Bergen County;<br>CHIEF ARTHUR O'KEEFE, as an<br>individual, and in his Official Capacity as<br>Chief of the Englewood, New Jersey Police<br>Department<br>JOHN JAY HOFFMAN in his Official<br>Capacity as Attorney General of New Jersey<br>Defendants | CASE NO.<br>**COMPLAINT**<br>**DEPRIVATION OF CIVIL RIGHTS**<br>**UNDER COLOR OF LAW** |

COME NOW Plaintiffs Marc Stephens, pro se, and complains as follow:

1. This is an action arising under (1) 42 U.S.C. § 1983, (2) the New Jersey Civil Rights Act, N.J.S.A. 10:6-1, et seq., (3) Article I, Paragraphs 1, 5, 7, 12, 18, and 21 of the New Jersey Constitution, and (4) the First, Second, Fourth, Fifth, Eighth, Ninth, Tenth, and Fourteenth Amendments of the United States Constitution concerning the State of New Jersey's regulations regarding the issuance of "Permits and Licenses" to purchase and carry firearms (the "Firearm Laws"). Plaintiff seeks declaratory judgment and injunctive relief.

### INTRODUCTION

2. The State of New Jersey's Firearm Laws, including but not limited to: N.J. Stat. §2C:39-2, 2C:39-3, 2C:39-4, 2C:39-5, 2C:39-6, 2C:39-9, 2C:39-14, 2C:58-3, 2C:58-3b, 2C:58-3c, 2C:58-3c(5), 2C:58-3d, 2C:58-3e, 2C:58-3f, 2C:58-3h, 2C:58-3i, 2C:58-3j, 2C:58-4a, 2C:58-4b, 2C:58-4c, 2C:58-4d, 2C:58-4f, 2C:58-5, 2C:58-6.1, 2C:58-7, 2C:58-10, 2C:58-12, 2C:58-15, 2C:58-17, 2C:58-19, and related statues such as N.J.A.C. 13:54, are all facially unconstitutional because each statue was <u>motivated by</u> and passed through legislature based on racism and discrimination which are violations of the First, Second, Fourth, Fifth, Eighth, Ninth, Tenth, and Fourteenth Amendments of the United States Constitution.

3. Because each statue regulate the issuing of permits and licenses to purchase and carry arms, firearms, and ammunition each statue is in violation of the first, second, fourth, fifth, ninth, tenth, and fourteenth amendment of the United States Constitution.

4. The root of New Jersey's firearm regulations requiring such as "permits", "licenses", "good character", "good cause", "good repute in the community", "public health safety and welfare", "need", "justifiable need", "urgent necessity for self-protection", "exemptions", and "limitations" are derived from slavery, motivated by racism and discrimination, and are vague or <u>stealthy words</u> and requirements that allows abuse of discretion, operates as a prior restraint, and a vehicle to infringe, limit, restrict, and ban firearms. <u>State v. Newsom, 27 N. C. 250 (1844)</u> "an act to <u>prevent</u> free persons of <u>color</u> from carrying <u>fire arms</u>," is not unconstitutional".

5. As mandated by, <u>N.J. Stat. § 2C:58-3c</u>  No person of "<u>good character</u>" and "<u>good repute in the community</u>" in which he lives, and who is not subject to any of the disabilities set forth under or other sections of the Firearm Laws, shall be denied a permit to purchase a handgun or a firearms purchaser identification card.

6. In order to purchase firearms Plaintiff must obtain approval from the chief of police, which approval is primarily based on his "opinion". Even if the permit or license to purchase or carry is approved by the chief of police, the superior court judge can <u>deny</u> the permit or license <u>at his own discretion</u>, which is solely based on **opinion**, not law.

7. As mandated by N.J. Stat. § 2C:58-3d, any person aggrieved by the <u>denial</u> of a permit or identification card may request a hearing in the Superior Court of the county in which he resides if he is a resident of New Jersey, or in the Superior Court of the county in which his application was filed if he is a nonresident.

8. It is a <u>felony</u> to possess a handgun without a Permit issued pursuant to the Firearm Laws. N.J. Stat. § 2C:39-5. A private citizen who does not hold a Permit or License to Carry may possess a handgun only within the confines of the "<u>exemptions</u>" that are set forth at N.J. Stat. § 2C:39-6. These exemptions do not permit a person to carry an operable handgun, except within his or her home, real property, or place of business.

9. There is no doubt that the State of New Jersey recognizes that citizens have a second amendment constitutional right to keep and bear arms "at home" and "in public". The issue with NJ firearm regulations is that the State went too far with its restrictions in regulating firearms in the interest of "public safety", which after viewing New Jersey's firearm history is a <u>fallacy</u>.

10. When individuals enjoy a constitutional "right" to engage in some activity, a license to engage in that activity cannot be conditioned on the government's determination of "justifiable need" or their "good moral character" or "good cause" to exercise that right. Defendants must be enjoined from imposing this classic form of unconstitutional prior restraint and abuse of discretion against the fundamental right to keep and bear arms. Where fundamental rights are concerned, a system of prior restraint cannot employ uncontrolled discretion.

11. Of course, Defendants have an interest in regulating firearms in the interest of "public safety", just as Defendants have an interest in preventing "fatal vehicle accidents on public roads", defamatory speech, and keeping citizens safe inside their homes against unreasonable searches.  But the firearm laws cannot infringe upon the core right of the second amendment.

12. Under N.J.S.A. Stat. § 2C:58-4(c)-(d) and N.J.S.A. 2C:58-3(c) it **does not matter** if a citizen has "no prior criminal history", "not drug dependent", "no mental health issues", "does not suffers from a physical defect or disease", "no age restrictions", "not adjudicated delinquent", "not a threat to public health, safety and welfare", "firearm never been seized pursuant to the "Prevention of Domestic Violence Act of 1991", and **is** of "good character", "good cause", "good repute in the community", "have need", "show justifiable need", "prove urgent necessity for self-protection for a firearm", "been a victim of robbery", "live in a neighbor with high crime", was "kidnapped", or was "shot at" by madmen, the chief of police and the superior court judge have the power to **deny** a firearm permit or license and infringe upon the second amendment right to keep and bear arms at home and in public, such as in the matter of Plaintiff Marc Stephens.

13. New Jersey's Firearm Law clearly infringes upon the Plaintiff's Constitution rights because None of the rights expressed in the Bill of Rights can be denied, abridged, violated, or infringed upon, unless there is first an **abuse** of that right, **or** if someone gives consent – Implied or Direct (waiver).

14. None of the bill of rights are "unlimited", but NJ deliberately use the word out of context to implement limitation on the **core right** to keep and bear arms at home and "in public".

15. Theoretically speaking, if N.J.S.A. Stat. § 2C:58-4(c)-(d) and N.J.S.A. 2C:58-3(c) is applied against the fourth amendment, it would give the state the right, based on their "opinion", to unreasonably search and seizure your persons, houses, papers, and effects without a warrant, or without probable cause. Prior restraints, censorship, and discrimination have been proven by the U.S. Supreme Court to be unconstitutional.

16. Because "bearing arms" is now acknowledged by the U.S. Supreme Court as a fundamental right for individuals to protect self, family, and **property**, New Jersey's restrictive firearm regulations, which approvals to obtain a permit or license are based solely on "opinion", and "discrimination" are no longer valid.

17. New Jersey deliberately passed Firearm Laws that are facially unconstitutional by hiding behind the veil of "public safety", "presumption of constitutionality", "intermediate scrutiny", "suppressed evidence", and alleged "longstanding regulations".

18. New Jersey takes advantage of the "presumption of constitutionality" by shifting the burden of proof onto its citizens to prove that a statute is unconstitutional. As a panel of judges expressed, "The justifiable need standard is a longstanding regulation that enjoys presumptive constitutionality,". A presumption is itself unconstitutional, because government should be forced to prove that laws are not violating liberty. A presumption is rebuttable in that it can be refuted by factual evidence. Nevertheless, plaintiff will provide undeniable proof that there is **reasonable inference** that the Defendants are liable for the conduct alleged, and that New Jersey's Firearm Law is, facially unconstitutional in **all of its application**.

## JURISDICTION AND VENUE

19. Pursuant to 28 U.S.CA. § 1391 and § 1343, this Court has subject matter jurisdiction over this action because it involves federal questions arising under the First, Second, Fourth, Fifth, Ninth, Tenth, and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983. Plaintiff further invokes the pendent jurisdiction of this court to consider claims arising under the State of New Jersey's Firearm Laws, including but not limited to: N.J. Stat. §2C:39-2, 2C:39-3, 2C:39-4, 2C:39-5, 2C:39-6, 2C:39-9, 2C:39-14, 2C:58-3, 2C:58-3b, 2C:58-3c, 2C:58-3c(5), 2C:58-3d, 2C:58-3e, 2C:58-3f, 2C:58-3h, 2C:58-3i, 2C:58-3j, 2C:58-4a, 2C:58-4b, 2C:58-4c, 2C:58-4d, 2C:58-4f, 2C:58-5, 2C:58-6.1, 2C:58-7, 2C:58-10, 2C:58-12, 2C:58-15, 2C:58-17, 2C:58-19.

20. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983.

21. This Court has personal jurisdiction over each of the Defendants because Defendants resides, work, and are located in New Jersey, and all acts giving rise to the violation of law complained of occurred in this District, and inter alia, they acted under color of New Jersey state law and/or within the geographic confines of the State of New Jersey.

22. Venue is proper in this District pursuant to 28 USC § 1391.

## THE PARTIES

23. Plaintiff, Marc A. Stephens is a citizen of the United States residing in the city of Englewood, New Jersey.

24. Defendant the Hon. Edward A. Jerejian ("Superior court Judge") is sued in his official capacity as presiding Judge of the Superior Court of Bergen County, New Jersey, responsible for approving and issuing applications for firearm permits and licenses pursuant to N.J.S. 2C:39-1 et seq., N.J.S. 2C:58-1 et seq., N.J.A.C. 13:54-1 et seq., and related regulations.

25. Defendant Chief Arthur O'Keeffe ("Chief of Police") is sued as an individual and in his official capacity as Chief Police Officer of Englewood, New Jersey, responsible for approving and issuing applications for firearm permits and licenses pursuant to N.J.S. 2C:39-1 et seq., N.J.S. 2C:58-1 et seq., N.J.A.C. 13:54-1 et seq., and related regulations.

26. Defendant John Jay Hoffman ("Attorney General") is sued in his official capacity as Attorney General of New Jersey, responsible for executing and administering the laws and policies for firearm permits and licenses pursuant to N.J.S. 2C:39-1 et seq., N.J.S. 2C:58-1 et seq., N.J.A.C. 13:54-1 et seq., and related regulations.

## STATEMENT OF FACTS

### A. History of the State of New Jersey, Second Amendment, and regulation of firearms.

27. Black slaves were prohibited from carrying firearms by a 1639 Virginia law, which prescribed 20 lashes for violations of the statute. There was one exception: with his master's permission, a slave could bear firearms to defend against Indian raids.

28. In October 1694, "An Act concerning Slaves" was enacted in New Jersey; [§1] WHEREAS **complaint** is made by the inhabitants of this Province, that they are greatly injured by **slaves having liberty to carry guns** and dogs, into the woods and plantations, under pretence of guning, do kill swine. Be it enacted by the Governor, Council and Deputies in General Assembly met and assembled, and by the authority of the same, that no slave or slaves within this Province after publication hereof, be permitted to carry any gun or pistol, or take any dog with him or them into the woods, or plantations, upon any pretence whatsoever; unless his or their owner or owners, or a white man, by the order of his or their owner or owners, be with the said slave or slaves; [§4] And be it further enacted by the authority aforesaid, that if any person or persons shall **lend, give or hire out** to any slave, or slaves, pistol, gun or guns, the said person or persons so lending, giving, or hiring, shall forfeit the said pistol, gun or guns, or twenty shillings to the owner of the said slave or slaves, to be recovered as an action of debt as aforesaid. East New Jersey Laws, October 1694, ch.II, "An Act concerning Slaves, &c.," L&S 340-342. As mentioned in the complaint the fear of slaves with guns was a "**Public Safety**" Concern.

29. Today, of course excluding the words "slave or slaves", the same language is mandated by **N.J.S.A 2C:39-4a(2)**, "Any person who possesses, receives or transfers a **community gun** is guilty of a crime of the second degree and shall be sentenced to a term of

imprisonment by the court. As used in this paragraph, "community gun" means a firearm that is transferred among, between or within any association of two or more persons..".

30. In 1713 (after a violent slave uprising in New York), **special laws** were enacted to control the actions of slaves. **Slaves were forbidden to carry firearms** when not in the company of their masters, and anyone who **gave or lent a gun to a slave** faced a fine of 20 shillings. Slaves could not **assemble** on their own, or be in the streets at night. Controls were further tightened during times of crisis. Today's statues read as follow, **2C:39-14b**. "Any person who **assembles** with one or more persons for the purpose of training with, practicing with, or being instructed in the use of any firearm, explosive or destructive device, or technique capable of causing injury or death to a person, intending to unlawfully employ it for use in, or in furtherance of, an illegal activity is guilty of a crime of the second degree".

31. Quoting New Jersey Court of Appeals opinion in Drake v Jerejian, "New Jersey legislators, however, have made a policy judgment that the state can **best protect public safety** by allowing only those **qualified individuals** who can demonstrate a "justifiable need" to carry a handgun to do so".

32. The "qualified" or "not qualified" requirement is linked to slavery as mentioned in a New Jersey act.."An Act to prevent the Killing of Deer out of Season, and against Carrying of Guns and Hunting by Persons **not qualified**," ["And be it further Enacted by the Authority aforesaid, That this Act nor any part thereof, shall be construed to extend to Negro, Indian or Mullato Slaves, so as to commit them to prison, during the Time in this Act limitted, in case they should be Guilty of any of the Offences in this Act prohibited, but that and in such case such Indian, Negro or Mullato Slave killing and destroying any Deer as aforesaid, or **carrying or Hunting with any Gun, without Lisence from his Master**, shall, at the Publick Whipping post, on the bare Back, be Whipt, not exceeding twenty Lashes for every such Offence, for which Whipping the Master shall pay to the Whipper the Sum of Three Shillings.."]. May 5, 1722, 2 Bush 293, 295; 1 Nevill [8 Geo. 1] ch.XXXV, §6, p.102. http://njlegallib.rutgers.edu/slavery/acts/A15.html

33. In 1751, in New Jersey "An Act ...to prevent Negroes and Molatto Slaves,...from meeting in large Companies,...and from hunting or carrying a Gun on the Lord's Day was enacted. This act is similar to **N.J.S.A 2C:39-14b**. "[§2] AND BE IT FURTHER ENACTED, by the Authority aforesaid, that if any Negro or Molatto Slaves shall at any Time hereafter **Meet and Assemble together**, more than to the Number of Five, unless being on his, her or their Masters or Mistresses Business and Employment; the Constable or Constables on Information or Knowledge thereof, shall, and are hereby required to apprehend the Negro and Molatto Slaves that shall so meet, and carry them before the next Justice of the Peace, who is hereby required and directed to order him, her or them to be whipped on their bare Backs at his Discretion "[§3] AND BE IT FURTHER ENACTED, by the Authority aforesaid, That if any Negro or Molatto Slave or Slaves, shall be seen or found from his or their Masters House, after the Hour of Nine at Night, except on their Masters or Mistresses particular Business, or shall be seen to hunt, **or carrying a Gun** on the Lord's Day; the Constable or Constables of such Town or Precinct, on Information or Knowledge thereof, shall and are hereby required and directed, to apprehend and carry such Negro and Molatto Slaves before the next Justice of the Peace, who shall order such Negro or Molatto Slave or Slaves, if found Guilty, to be whipped as by the preceding Clause of this Act is directed". Oct. 25, 1751, 3 Bush 180-181; 1 Nevill [25 Geo. II] ch.CXI, p.443-444; Allinson ch. CCXLI, p.191-192. Note: Allinson gives date as Oct.23,1751. http://njlegallib.rutgers.edu/slavery/acts/A18.html

34. Four States adopted analogues to the Federal Second Amendment in the period between independence and the ratification of the Bill of Rights. Two of them—Pennsylvania and Vermont—clearly adopted individual rights unconnected to militia service. Pennsylvania's Declaration of Rights of 1776 said: "That the people have a right to bear arms for the defense of themselves, and the state … ." §XIII, in 5 Thorpe 3082, 3083 (emphasis added). In 1777, Vermont adopted the identical provision, except for inconsequential differences in punctuation and capitalization. See Vt. Const., ch. 1, §15, in 6 id., at 3741 North Carolina also codified a right to bear arms in 1776: "That the people have a right to bear arms, for the defense of the State … ." Declaration of Rights §XVII, in id., at 2787, 2788., see opinion, Heller

35. In 1776, New Jersey declared itself an independent state.

36. In 1787, New Jersey became the third state to ratify the U.S. Constitution and the first State to sign the Bill of Rights.

37. On December 15, 1791, The Second Amendment was adopted as part of the first ten amendments comprising the Bill of Rights.

38. In 1804, the New Jersey legislature "supposedly" adopted a plan for the gradual abolition of slavery. Those born prior to the Act remain enslaved for life.

39. In 1821, New Jersey's highest court affirmed a jury instruction that "**blackmen**, in contemplation of the law, are prima facie slaves, and as such are entitled to be treated as such.", Gibbons v. Morse, 7 N.J. L. 253.

40. In 1830, of the 3,568 Northern blacks who remained slaves, more than two-thirds were in New Jersey.

41. In1844, New Jersey amended its constitution to read "all men are by nature free and have certain inalienable rights such as to life, to liberty and to the pursuit of happiness." Despite these lofty sentiments, the sad record reveals that slavery existed in New Jersey from its very beginnings until the Thirteenth Amendment to the United States Constitution abolished slavery in 1865. In fact, New Jersey was the last Northern state to outlaw slavery.

42. It was later discovered that the New Jersey constitutional amendment was **not** enacted for the purpose of ending slavery. Had the New Jersey constitutional convention intended to end an institution such as slavery well known to exist in the State and established by law, it undoubtedly would have used some **clear and definite language** to this effect. ["The relation of master and slave existed by law, when the present constitution of the State of New Jersey was adopted. That constitution has not destroyed that relation, abolished slavery, or **affected the laws** in relation to that subject existing at the time of its adoption"]. New Jersey, State v. Post, 20 N.J.L. 368, 1845 N.J. Sup. Ct. 14.

43. Dred Scott v. Sandford, 60 U.S. 393 (1857) the opinion of the Supreme Court stated that if African Americans were considered U.S. citizens, "It would give to persons of the negro race, who were recognized as citizens in any one State of the Union, **the right…to keep and carry arms wherever they went.**"

44. On Dec. 18, 1865, slavery ended in the United States. New Jersey, like other northern states, replaced outright slavery with stricter controls of free blacks.

45. In 1868, 11 years after Sandford ruling, the Fourteenth Amendment to the Constitution is ratified, defining citizenship. Individuals born or naturalized in the United States are American citizens, including those born as slaves. This nullified the Dred Scott Case (1857), which had ruled that blacks were not citizens.

46. Andrews v. State, 50 Tenn. (3 Heisk.)165, 172 (1871), Just 3 years later after the Fourteenth Amendment to the Constitution is ratified, a total gun ban is passed; "to prohibit the carrying of deadly weapons, is constitutional".

47. In United States v. Cruikshank, 92 U.S. 542 (1875), the Supreme Court of the United States ruled that, "The right to bear arms is not granted by the Constitution; neither is it in any manner dependent upon that instrument for its existence" and limited the applicability of the Second Amendment to the federal government. This ruling came just 7 years after the ratification of the fourteenth amendment which essentially allowed African Americans in any one State of the Union, "the right...to keep and carry arms wherever they went."

48. Presser v. Illinois, 116 U.S. 252 (1886) "A state cannot prohibit the people therein from keeping and bearing arms to an extent that would deprive the United States of the protection afforded by them as a reserve military force."

49. Robertson v. Baldwin, 165 U.S. 275 (1897), the Court stated in dicta that laws regulating **concealed arms** did not infringe upon the right to keep and bear arms and thus were not a violation of the Second Amendment.

50. In 1905, 8 years later after Baldwin, New Jersey enacted a statute providing for criminal punishment of the **concealed carrying** of ""[a]ny person who shall carry any revolver, pistol, firearm, bludgeon, blackjack, knuckles, sand-bag, slung-shot or other deadly, offensive or dangerous weapon, or any stiletto, dagger or razor or any knife with a blade five inches in length or over concealed in or about his clothes or person, shall be guilty of a misdemeanor").," but allowed an exception for those with permits. Compiled Statutes of New Jersey, Vol. II., 1759 (Soney & Sage 1911). Today, the same language is found in **NJ 2C:39-9d and 2C:39-3e**, "Any person who knowingly has in his possession any gravity knife, switchblade knife, dagger, dirk, stiletto, billy, blackjack, metal knuckle, sandclub, slingshot, cestus or similar leather band studded with metal filings or razor blades imbedded in wood, ballistic knife, without any explainable lawful purpose, is guilty of a crime of the fourth degree".

51. In United States v. Miller (1939), the Supreme Court ruled that the federal government and the states could limit any weapon types not having a "reasonable relationship to the preservation or efficiency of a well-regulated militia".

52. In 1966, New Jersey amended its laws to prohibit individuals from carrying handguns in public, in any manner, without first obtaining a permit, and conditioned the issuance of such permits on a showing of need.

53. The predecessor to the New Jersey Firearm Law subsequently underwent multiple revisions, the requirement of "need" enduring each, and ultimately the present-day standard of "justifiable need" became statutorily enshrined in 1978.

54. New Jersey's permit schema as it stands today was last amended in 1981. N.J. Stat. Ann. § 2C:58-4.

55. In District of Columbia v. Heller (2008), the Supreme Court handed down a landmark decision, expressly holding the 2nd amendment to protect an **individual right** to possess and carry firearms, and to use that arm for traditionally lawful purposes.

56. In McDonald v. Chicago (2010), the Court clarified its earlier decisions that limited the amendment's impact to a restriction on the federal government, expressly holding that the Fourteenth Amendment applies the Second Amendment to state and local governments to the same extent that the Second Amendment applies to the federal government.

## B. New Jersey refuses to acknowledge Heller's and McDonald's ruling on the Right to Keep and Bear Arms at home and in public.

57. Bergen County developed as the largest slaveholding county in the state, "Bergen County Slavery", Bergen County, accessed 13 July 2012. Although slavery has not existed in New Jersey for well over one hundred years, the **statutes and court decisions** regulating that institution remain a part of the legal heritage. Reprinted from Gary K. Wolinetz, New Jersey Slavery and the Law 50 Rutgers L. Rev. 2227-2258 (1998)(Permission Requested)(Citations Omitted).

58. The Constitution does not explicitly mention any right to keep and bear arms "at home" or "in public", just as the first amendment does not explicitly mention a right to free speech "at home" or "in public". Just as speech is connected to a person at home and in public, the protection of self is connected to a person at home and in the public. Self-defense does not stop at home.

59. In a line of decisions, however, the Supreme Court has recognized that a right to keep and bear arms **in public** does exist under the Constitution. Quoting Heller, "At the time of the founding, as now, to "bear" meant to "carry." See Johnson 161; Webster; T. Sheridan, A Complete Dictionary of the English Language (1796); 2 Oxford English Dictionary 20 (2d ed. 1989) (hereinafter Oxford). When used with "arms," however, the term has a meaning that refers to carrying for a particular purpose—confrontation. In Muscarello v. United States, 524 U. S. 125 (1998), in the course of analyzing the meaning of "carries a firearm" in a federal criminal statute, Justice Ginsburg wrote that "[s]urely a most familiar meaning is, as the Constitution's Second Amendment ... indicate[s]: '**wear, bear, or carry ... upon the person or in the clothing or in a pocket**, for the purpose ... of being armed and ready for offensive or defensive action in a case of conflict with another person.' " Id., at 143 (dissenting opinion) (quoting Black's Law Dictionary 214 (6th ed. 1998)). We think that Justice Ginsburg accurately captured the natural meaning of "bear arms."

60. Quoting Heller (and McDonald v. City of Chicago, Ill., 130 S. Ct. 3020 (2010)) did far more than recognize a right to possess handguns in the home for self-defense. Rather, they confirmed that the Second Amendment secures (not "creates") an individual, natural right of armed defense, Heller, 554 U.S. at 598-99, and that at the core of this guarantee is the right to keep and bear arms for "defense of self, family, and **property**." Id. at 591-594; McDonald, 130 S. Ct. at 3048 (the "inherent right of self- defense has been central to the Second Amendment right").

61. As opinion by Judges Grall, "In each of the instances covered by the foregoing exceptions, a lawful reason, or need, for having a handgun is obvious: keeping or transporting a handgun for lawful use; using it in lawful defense of home, family and **property**; using it recreationally or for training where that conduct is lawful; and transporting it, secured, in

connection with acquisition, maintenance or use for one of the lawful purposes". (quoting In The Matter Of Application of Jonathan R. Wheeler). Article I of New Jersey's Constitution reads: "All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting **property**, and of pursuing and obtaining safety and happiness".

62.  New Jersey Legislature has codified definitions of commonly used terms, N.J.S.A. 1:1–2 to –2b, and general rules of construction, N.J.S.A. 1:1–1, which guides our analysis. Within N.J.S.A. 1:1–2, the Legislature defined the term "**property**." Pursuant to N.J.S.A. 1:1–2, "property," "unless restricted or limited by the context to either real or personal property, includes **both real and personal property**." Personal property, in turn, includes goods and chattels, rights and credits, moneys and effects…", Larissa Shelton v. Restaurant.com, Inc. (A-123-10) (068404).  Chattel is any article of tangible property other than land, buildings, and other things annexed to land.  A vehicle is personal property/chattel, which are driven "in public". Firearms and arms are personal property/chattel which can be carried at home and in public.

63.  New Jersey actually admits that their main goal is **to limit** the use of guns as much as possible, State v Valentine 124 N.J. Super. 425 (1973).  The second amendment clearly state the right to keep and bear arms should not be infringed.  To infringe means, to encroach upon in a way that violates law or the rights of another; act in disregard of laws, rules, contracts, or promises; "offend all laws of humanity"; "violate the basic laws or human civilization"; "break a law"; "break a promise", and "**to limit"**, which is facially unconstitutional.

64.  The New Jersey courts are constantly denying applications based on "public safety health and welfare", and "justifiable need".  The Justifiable need is denied based on the court instructing individuals who request to carry a firearm for their safety to hire or use local police for protection as an "alternative" against serious threats, as in Siccardi.

65.  Neither the U.S. Constitution nor the federal civil rights laws require states to protect citizens from crime, Warren v. District of Columbia[1] (444 A.2d. 1, D.C. Ct. of Ap. 1981), Castle Rock v. Gonzales, 545 U.S. 748 (2005).

66.  As a federal appeals court bluntly put it in Bowers v. DeVito, 686 F.2d 616 (7th Cir. 1982), ordinary citizens have "no constitutional right to be protected by the state against being murdered by criminals or madmen." U.S. Supreme Court has repeatedly held that the police owe no duty to protect individual citizens.  In 1856, the U.S. Supreme Court (South v. Maryland) found that law enforcement officers had no affirmative duty to provide such protection.

67.  The long history of Supreme Court cases indicating that the governments, nor local police, are responsible for violent attacks against citizens, should be a clear indicator, that the second amendment of the United States Constitution gives the citizens the right to keep and bear arms "at home", and "in public", to protect themselves against being murdered by criminals or madmen.

**C. New Jersey's Asserted Justifications Requirement on Public Safety is a fallacy.**

68.  Governments must offer evidence sufficient to establish a reasonable fit between regulations implicating the right to bear arms and their asserted justifications.  United States v. Chester, 628 F.3d 673 (4th Cir. 2010).

69. New Jersey has asserted that the interests served by the Firearm Law and its "justifiable need" standard include "combating handgun violence," "combating the dangers and risks associated with the misuse and **accidental** use of handguns," and "reduc[ing] the use of handguns in crimes." All of these interests fall under the substantial government interest in "ensur[ing] the safety of all of its citizenry." Paragraph 28, mentioned herein, proves this is **false**.

70. The substantial government interest in the safety of all of its citizenry should also apply to **vehicles**, 'Combating drunk drivers driving under the influence and over the BAC limit", "Combating the dangers and risk associated with speeding", and "reducing fatal accidents of automobiles". Protecting the public from fatal **accidents** and Drunk drivers is also Significant, substantial, and important interest, but does not require fingerprinting, or justifiable need, unless there is **first** an abuse such as vehicular manslaughter.

71. In regards to "public safety", nowhere under Title 39 Motor Vehicles and Traffic Regulation, or any vehicle code or statue, does it require citizens of New Jersey to provide fingerprinting, background checks, or to show "good character", "good cause", "good repute in the community", "need", "justifiable need", or "urgent necessity", in order to be issued a permit or license for a **vehicle**, which by definition is a **deadly weapon**.

72. According to Statue 2C:11-1, Definitions: "Deadly weapon" means any **firearm** or **device** that is known to be capable of producing death or serious bodily injury.

73. According to Title 39 Motor Vehicles and Traffic Regulation; 39:1-1, Words and phrases defined: "**Vehicle**" means every **device** which a person or property is or may be transported upon a highway. Under New Jersey Code of Criminal Justice - 2C:12-1, a person is guilty of assault if he negligently causes bodily injury to another with a "deadly weapon".

74. According to 2C:12-1c(1), A person is guilty of assault by auto when the person drives a vehicle recklessly and causes serious bodily injury.

75. An automobile "vehicle", and a handgun "arms", both fall under the same definition of a "deadly weapon". Both a vehicle and firearm are considered a **public safety concern**. There are more deaths in the State of New Jersey by vehicles than firearms.

76. In the State of New Jersey, where the population is over 8 million people, there were a total of 269 deaths by firearms in 2011. In the same year, there were **635 deaths by vehicles** and a total of **293,595 injuries accidents**. Arizona is a state (population is over 6.5 million) where citizens are able to carry a weapon openly or concealed without the need for a license, and without providing a justifiable need, had a total of 222 deaths by guns in 2011.

77. In 2013, according to New Jersey Department of Transportation, there were a state wide total of 283,115 accidents, 60,705 injuries accidents, and 506 fatal crashes. From 1999 to 2013, there have been a total of 4,604,941 crashes, 927,408 injuries crashes, and **7,934 fatal crashes**. There are by far more vehicle accidents than firearm accidents in New Jersey.

78. In 1871, the first carriage-sized automobile invented suitable for use on existing wagon roads in the United States was a steam powered vehicle. It had a top speed of 6 miles per hour. Today, vehicles top speed is 270 miles per hour, and still no justifiable need required.

79. The reason why there is no requirement to show "good character", "good cause", "good repute in the community", "need", "justifiable need", or "urgent necessity" in order to

obtain a permit or license for a vehicle is because every citizen have a right to travel which is guaranteed by the United States Constitution, and the New Jersey Constitution, Article I, paragraph 1, and paragraph 5, Twining v. New Jersey, 211 U.S. 78, 97.

## D. New Jersey Cannot Locate Any Legislative Evidence to Support Predictive Judgment.

80.  New Jersey's counsel acknowledges that "there is **no available commentary** which would clarify whether or not the Legislature considered statistical information to support the "public safety" purpose of the State's Carry Permit Law."

81.  The reasons why New Jersey supposedly "cannot locate" any legislative evidence to support such predictive judgment on their procedure in passing their firearm laws, is because its origin is rooted and motivated by slavery, racism and discrimination.  Once the fourteenth amendment was ratified -- clarifying that African American are citizens and were allowed to keep and bear arms -- the US Supreme Court and many states, in retaliation, passed laws prohibiting "citizens" from gun ownership, and NJ followed suit with their "limitations", "banning", "permitting", "licensing", "need", and "justifiable need" requirements.

82.  The facade that the New Jersey courts and legislature use today about the "permits", "licenses", "good character", "good cause", "good repute in the community", "need", "justifiable need", "urgent necessity for self-protection" and "complete banning" is for public safety is a fallacy, and is rooted in slavery and motivated by discrimination to keep firearms out the hands of Slaves and African-American Citizens.  This is why in 1965 most of the alleged firearm research explained in Siccardi was based on "anecdote evidence" and "opinions".  Anecdote evidence means "non-scientific observations or studies, which do not provide proof but may assist research efforts, and because of the small sample, there is a larger chance that it may be **unreliable** due to **cherry-picked** or otherwise non-representative samples of typical cases".

83.  It's safe to say that the root and motivation of gun regulations such as "permits", "licenses", "good character", "good cause", "good repute in the community", "need", "justifiable need", "urgent necessity for self-protection" and "complete banning" is based on slavery, racism and discrimination.  State v. Newsom, 27 N. C. 250 (1844) "an act to prevent free persons of color from carrying fire arms," is not unconstitutional".  Dred Scott v. Sandford, 60 U.S. 393 (1857) the opinion of the court stated that if African Americans were considered U.S. citizens, "It would give to persons of the negro race, who were recognized as citizens in any one State of the Union, the right...to keep and carry arms wherever they went." No permit or license, no gun.

84.  Racism and discrimination is unconstitutional, and New Jersey gun laws requiring "permits", "licenses", "good character", "good cause", "good repute in the community", "need", "justifiable need", "urgent necessity for self-protection" "public health safety and welfare", and "complete banning" are based on longstanding regulations rooted in slavery and motivated by racism and discrimination.

85.  This is why there is no "good character", "good cause", "good repute in the community", "need", "justifiable need", urgent necessity" and "complete banning" to obtain a permit or license for a vehicle which actually kills more people than firearms and should be a main priority in protecting the public.  One has to ask why New Jersey does not have a "need', "good character", "public safety health and welfare" or "justifiable need" clause for vehicle permit and licensing scheme.  Drunk drivers, mentally ill, and convicted felons, are even allowed to just pay a fine and maintain their driver's license in order to drive a vehicle (deadly weapon).

86. From when the Second Amendment was adopted in 1791, to the United States v. Cruikshank ruling in 1876, which is 85 years, citizens were free to exercise their constitutional right and keep and bear arms at home and in public without good character, good repute in the community, need, or justifiable need. Despite the outcome from both Supreme Court rulings in United States v. Cruikshank and United States v. Miller, New Jersey still allowed citizens to carry concealed firearms with permits, and without a "need" or "justifiable need" requirement.

87. From when the Second Amendment was adopted in 1791 to 1966 (which is 175 years) when New Jersey amended its laws to prohibit individuals from carrying handguns in public, in any manner, without first obtaining a permit, and again conditioned the issuance of such permits on a showing of need, New Jersey allowed citizens to carry firearms in public without showing a need.

88. So in total from 1791 – 1979, which is 188 years, New Jersey allowed "citizens" to carry firearms in public without showing "good character", "good cause", "good repute in the community", "justifiable need", or "urgent necessity for self-protection".

89. New Jersey's "good character", "good cause", "good repute in the community", "justifiable need", "urgent necessity for self-protection" schemes are not that longstanding, 48 years, compare to 175 years, and more, of no showing of "good character", "good in the community", "need" or "showing of urgent necessity" or "justifiable need" requirement to carry firearms in public. It is also recorded that before the ratification of the second amendment that the right of the people to keep and bear arms "in public" was a **common law right**.

90. District of Columbia v. Heller (2008) and McDonald v. Chicago (2010) clearly **restored** the 2nd amendment individual rights that were taken away by the rulings of previous courts including United States v. Cruikshank (1876), and United States v. Miller (1939).

91. The trial and district courts across the country that refuse to acknowledge the rulings of Heller and McDonald are using the argument that the rulings do not contain "**clear and definite language**", which again shows signs of discrimination based on the link of slavery and the regulation of firearms. Prior to the supreme court error in their rulings of United States v. Miller (1939) and United States v. Cruikshank (1876), to keep and bear arms was already understood to mean at "home" and "in public", and New Jersey acknowledges this fact.

92. In New Jersey, **before** the "Act concerning Slaves" in October 1694, even **slaves** had the **right** to keep and bear arms "at home" and "in public" **without** the permission of their "master". This is evident that "citizens" have common law rights to carry arms in public.

## E. New Jersey Firearm Laws Cannot Withstand A Rational Basis Review, Intermediate Scrutiny, Or Strict Scrutiny.

93. In order to convince the court to apply strict scrutiny, it is necessary to show that the state's action was "motivated by a discriminatory" purpose. **Section A**, mentioned herein, which discussed the history of New Jersey, the second amendment, and firearm regulations satisfies the strict scrutiny application to strike down New Jersey's facially unconstitutional firearm statues.

94. Under intermediate scrutiny, the government must assert a significant, substantial, or important interest. There must also be a "reasonable" fit between that asserted interest and the challenged law, such that the law does not burden more conduct than is reasonably necessary. **Section A, B, and C** mentioned herein, satisfy the intermediate scrutiny application. Plaintiff's

application process took <u>four</u> court appearances lasting <u>1 year and 8 months</u> just to receive a decision <u>denying</u> his firearm application based on the court's perceiving Plaintiff as a **threat to public safety**. This is a clear <u>burden</u> on the Plaintiffs rights and is facially unconstitutional.

95. Under Rational Basis Review, government needs only to show that the challenged classification is "rationally" related to serving a legitimate state interest. **Sections A, B, C, and D**, mentioned herein, satisfy the rational basis review application.

## F. Plaintiffs <u>Denied</u> Firearm Purchaser Identification Card And Permit To Purchase A Handgun After Testimony And Evidence <u>Proved</u> Valid And <u>Serious Threats</u> Satisfying The "<u>Justifiable Need</u>" Standard.

### Filing gun application

96. On January 11, 2013, Plaintiff was <u>compelled</u> to file an application for a firearm with the Englewood Police Department. Plaintiff sent a letter to Sgt. Alston regarding multiple threats that he was receiving from several individuals aggressively trying to locate him. In the letter Plaintiff mentioned that he received an email indicating that his family members would be killed, and that his mother in law was found dead with a gunshot wound to her neck, and was the daughter of Ret. State House of Representative Helene Hale in Hawaii, and wife of a judge in Los Angeles.

### Fingerprint scan

97. On January 15, 2013, Plaintiff took finger print scans for his firearm.

98. On February 1, 2013, Plaintiff grandmother in-law, Ret. State House of Representative Helene Hale in Hawaii, was found dead in her home in Hawaii.

### Chief denial

99. In February and March 2013, both of plaintiff references submitted a complete and signed firearm questionnaire to the Englewood Police Department. Plaintiff visited Sgt. Alston on multiple occasions stating the urgency of protecting his household due to the non-stop threats against him and his family. One threat included a photo posted on the internet of plaintiff mother house in Englewood, NJ stating "I see a dead icon", submitted into evidence.

100. On May 30, 2013, Plaintiff sent a letter, via certified mail, to Chief Arthur O'Keefe reminding him that it had been four (4) months with no approval, and Pursuant to 2C:58-3(f) Granting of permit or identification card, that the licensing authority who shall investigate the same and, unless good cause for the denial thereof appears, <u>shall grant the permit</u> or the identification card, or both, if application has been made therefor, within 30 days from the date of receipt of the application for residents of this State.

101. On June 4, 2013, Plaintiff received a letter from Chief Arthur O'Keefe of the Englewood Police Department **denying** his firearm application. The reason for the denial was not due to criminal history, age, or mental condition, but for **Public Health Safety and Welfare** – NJSA 2C:58-3(5), see **EXHBIIT A**.

102. On June 7, 2013, Plaintiff requested a hearing with the superior court. A hearing was scheduled for September 13, 2013.

### Filed hearing request

103. On August 14, 2013, Plaintiff filed a brief with the courts regarding the Chief of Police denial of his firearm permit. Plaintiff argued that the NJ firearm law is unconstitutional.

### First hearing

104. On September 13, 2013, the hearing was adjourned because the prosecutor presented information and case law which the Plaintiff did not receive proper notice and was unable to argue. The prosecutor argued because the plaintiff brother was previously convicted of robbery and had, on court record, the same address as the plaintiff, the plaintiff was disqualified. The prosecutor referred to the re application of Clark, 257, NJ Super. 152, 154. (Law Div. 1992).

105. On November 6, 2013, the plaintiff filed a brief showing testimonial and documented evidence of how his brothers was framed by several Detectives of the Englewood Police Department, and that the re application of Clark, 257, NJ Super. 152, 154. (Law Div. 1992) does not relate to the plaintiff's matter.

### Second hearing

106. On November 15, 2013, the plaintiff and Sergeant Alston testified during the hearing. The plaintiff testified that he will not be residing with his brother once he was released from the Bergen county jail, and that his brother's case would be dismissed, with prejudice. The Plaintiff also argued that the court approved the permit for the matter of Starr Barrett based on her testimony.

107. Sergeant Alston testified that the plaintiff had **no disqualifiers** and was **not a threat to public safety**. The judge requested for another representative of the Englewood police department to investigate the plaintiffs' claims regarding the multiple threats. The plaintiff was contacted by Sergeant Pulice.

108. On February 11, 2014, the plaintiff forwarded a letter to Sergeant Pulice of the Englewood police department detailing the multiple threats against him and family members. The plaintiff and Sergeant Pulice met briefly at the Englewood police department. The plaintiff provided Sergeant Pulice with documentation, video and audio of the multiple threats from specific individuals from an organization called the Skeptics Society.

### Third hearing

109. On February 14, 2014, the testimony of the plaintiff and Sergeant Pulice was heard by the court. Sergeant Pulice testified that he conducted an investigation and stated that the threats against the plaintiff are "**serious threats**".

110. On March 6, 2014, Plaintiff received an Order from Judge Jerejian which **denied** his application for firearm based on (1) NJSA 2C:58-3(c)(5) – **public health, safety and welfare**, and (2) that Plaintiff brother resides at the same address, see **EXHBIIT B**.

111. On March 17, 2014, Plaintiff filed a motion for reconsideration regarding the March 6, 2014 Order denying his firearm permit.

112. On June 10, 2014, (three months) Plaintiff sent a reminder hearing request to Judge Jerejian and the prosecutors Ryan McGee regarding his motion for reconsideration.

113. On June 12, 2014, prosecutor Ryan McGee responded with an informal brief stating "In his opinion" the plaintiff was not entitled to a hearing based on a motion for reconsideration.

114. On June 17, 2014, the plaintiff responded to prosecutor Ryan McGee objection to having a hearing, and provided case law. A hearing was scheduled for August 7, 2014.

### Fourth hearing

115. On August 7, 2014, a hearing for the Plaintiffs motion for reconsideration was heard. The plaintiff argued again that his brother would not reside at the same address and provided proof of his brother's new address. The plaintiff also argued that the court erred in their interpretation of plaintiff's testimony giving on November 15, 2013 regarding being prepared to use a weapon, and that the prosecutor's "opinion" stating the plaintiff is "paranoid" does not supersede his constitution rights to gun ownership. Despite the Plaintiff providing documented evidence, audio, and video of threats, Judge Jerejian during closing arguments, and based on his opinion, stated that the Skeptics Society is not real. In fact, all of the documented evidence, audio, and video were the skeptics themselves **confirming** their "mob like" attacks against the plaintiff Marc Stephens and plaintiff's client Dr. Stanislaw Burzynski.

116. Judge Jerejian **denied** the plaintiffs motion for reconsideration again for **Public Health, Safety and Welfare** N.J.S.A 2C:58-3(c)(5). A copy of the Order was provided after the hearing, see **EXHBIIT C**.

## CONSTITUTIONAL PROVISIONS

117. The First Amendment provides:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

118. The Second Amendment provides:

> A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

119. The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

120. The Fifth Amendment provides:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be

> deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

121. The Eighth Amendment provides:
> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

122. The Ninth Amendment provides:
> The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people.

123. The Tenth Amendment provides:
> The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.

124. The Fourteenth Amendment provides:
> Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

## STATE LAW

125. The Following New Jersey Firearm statues, but not limited to, are facially unconstitutional:

126. 2C:39-2: is invalid as applied because it requires a private citizen to possess a permit or license who is otherwise eligible to possess a loaded and operable firearm for the purpose of self-defense, and if a private citizen does not possess a permit or license they will be charged with a crime is in violation of the 1st, 2nd, 5th, 8th, 9th, 10th, and 14th amendment of the United States Constitution.

127. 2C:39-3: is invalid as applied to limit or ban "firearms" and "arms", and to charge a citizen with a crime for being in possession of "firearms" and "arms" is in violation of the 1st, 2nd, 5th, 8th, 9th, 10th, and 14th amendment of the United States Constitution.

128. 2C:39-4: is invalid as applied to limit or ban "firearms" and "arms", and to charge a citizen with a crime for being in possession of "firearms" and "arms" is in violation of the 1st, 2nd, 5th, 8th, 9th, 10th, and 14th amendment of the United States Constitution.

129. 2C:39-5: is invalid as applied to limit or ban "firearms" and "arms", to charge a citizen with a crime for being in possession of "firearms" and "arms", to require a private citizen to possess a permit or license who is otherwise eligible to possess a loaded and operable firearm

for the purpose of self-defense, and if a private citizen does not possess a permit or license they will be charged with a crime in violation of the 1st, 2nd, 5th, 8th, 9th, 10th, and 14th amendment of the United States Constitution.

130. 2C:39-6: is invalid as applied to limit or ban "firearms" and "arms", to charge a citizen with a crime for being in possession of "firearms" and "arms", to require a private citizen to possess a permit or license who is otherwise eligible to possess a loaded and operable firearm for the purpose of self-defense, to enforce a trigger lock and lock box requirement, to restrict travel, and if a private citizen does not possess a permit or license they will be charged with a crime is in violation of the 1st, 2nd, 5th, 8th, 9th, 10th, and 14th amendment of the United States Constitution.

131. 2C:39-9: is invalid as applied to limit or ban "firearms" and "arms", to charge a citizen with a crime for being in possession of "firearms" and "arms", and to require a private citizen to possess a permit or license who is otherwise eligible to possess a loaded and operable firearm for the purpose of self-defense violates the 1st, 2nd, 5th, 8th, 9th, 10th, and 14th amendment of the United States Constitution.

132. 2C:39-14: is invalid as applied to prohibit free speech, the right to assemble, and to charge a citizen with a crime for being in possession of "firearms" and "arms" who is otherwise eligible to possess a loaded and operable firearm for the purpose of self-defense is in violation of the 1st, 2nd, 5th, 8th, 9th, 10th, and 14th amendment of the United States Constitution.

133. 2C:58-3: is invalid as applied to require a permit or license to purchase or transfer a firearm or arms is in violation of the 1st, 2nd, 5th, 8th, 9th, 10th, and 14th amendment of the United States Constitution.

134. 2C:58-3b: is invalid as applied to compel a private citizen to enforce gun regulations who is otherwise eligible to possess a loaded and operable firearm for the purpose of self-defense is in violation of the 1st, 2nd, 5th, 8th, 9th, 10th, and 14th amendment of the United States Constitution.

135. 2C:58-3c: is invalid as applied because the requirement of "good character" and "good repute in the community" is unconstitutionally vague, and to limit or ban "firearms" and "arms", and to charge a citizen with a crime for being in possession of "firearms" and "arms".is in violation of the 1st, 2nd, 5th, 8th, 9th, 10th, and 14th amendment of the United States Constitution.

136. 2C:58-3c(5): is invalid as applied the "Public Health Safety and Welfare" determination is unconstitutionally vague and vest the Chief Police Officers and Superior Court Judge with uncontrolled discretion to grant or deny approval of firearm applications in violation of the 1st, 2nd, 5th, 8th, 9th, 10th, and 14th amendment of the United States Constitution.

137. 2C:58-3d: is invalid as applied to require a private citizen to possess a permit or license who is otherwise eligible to possess a loaded and operable firearm for the purpose of self-defense is in violation of the 1st, 2nd, 5th, 8th, 9th, 10th, and 14th amendment of the United States Constitution.

138. 2C:58-3e: is invalid as applied the applications process is an invasion of privacy, and to compelled a private citizen to enforce gun regulations who is otherwise eligible to possess

a loaded and operable firearm for the purpose of self-defense is in violation of the 1st, 2nd, 5th, 8th, 9th, 10th, and 14th amendment of the United States Constitution.

139. 2C:58-3f: is invalid as applied because the requirement of "good character", "good repute in the community", and "good cause" is unconstitutionally vague, and to limit or ban "firearms" and "arms", and to charge a citizen with a crime for being in possession of "firearms" and "arms" is in violation of the 1st, 2nd, 5th, 8th, 9th, 10th, and 14th amendment of the United States Constitution.

140. 2C:58-3h: is invalid as applied to compelled a private citizen to enforce gun regulations who is otherwise eligible to possess a loaded and operable firearm for the purpose of self-defense is in violation of the 1st, 2nd, 5th, 8th, 9th, 10th, and 14th amendment of the United States Constitution.

141. 2C:58-3i:  is invalid as applied to limit or ban "firearms" and "arms", and to requires a private citizen to possess a permit or license who is otherwise eligible to possess a loaded and operable firearm for the purpose of self-defense is in violation of the 1st, 2nd, 5th, 8th, 9th, 10th, and 14th amendment of the United States Constitution.

142. 2C:58-3j:  is invalid as applied to compelled a private citizen to enforce gun regulations, the requirement of "good character", "good repute in the community", and "good cause" is unconstitutionally vague, and to require a private citizen to possess a permit or license who is otherwise eligible to possess a loaded and operable firearm for the purpose of self-defense is in violation of the 1st, 2nd, 5th, 8th, 9th, 10th, and 14th amendment of the United States Constitution.

143. 2C:58-3.1-3.3: is invalid as applied to limit or ban "firearms" and "arms", and to requires a private citizen to possess a permit or license who is otherwise eligible to possess a loaded and operable firearm for the purpose of self-defense is in violation of the 1st, 2nd, 5th, 8th, 9th, 10th, and 14th amendment of the United States Constitution.

144. 2C:58-4a: is invalid as applied to limit or ban "firearms" and "arms", and to requires a private citizen to possess a permit or license who is otherwise eligible to possess a loaded and operable firearm for the purpose of self-defense is in violation of the 1st, 2nd, 5th, 8th, 9th, 10th, and 14th amendment of the United States Constitution.

145. 2C:58-4b: is invalid as applied to compelled a private citizen to enforce gun regulations, the requirement of "good moral character", "good repute in the community", and "good cause" is unconstitutionally vague, and to require a private citizen to possess a permit or license who is otherwise eligible to possess a loaded and operable firearm for the purpose of self-defense is in violation of the 1st, 2nd, 5th, 8th, 9th, 10th, and 14th amendment of the United States Constitution.

146. 2C:58-4c: is invalid as applied the requirement of "good moral character", "good repute in the community", "good cause" and "justifiable need" is unconstitutionally vague, and to require a private citizen to possess a permit or license who is otherwise eligible to possess a loaded and operable firearm for the purpose of self-defense is in violation of the 1st, 2nd, 5th, 8th, 9th, 10th, and 14th amendment of the United States Constitution.

147. 2C:58-4d: is invalid as applied the requirement of "good moral character", "good repute in the community", "good cause" and "justifiable need" is unconstitutionally vague, to

limit or ban "firearms" and "arms", and to requires a private citizen to possess a permit or license who is otherwise eligible to possess a loaded and operable firearm for the purpose of self-defense is in violation of the 1st, 2nd, 5th, 8th, 9th, 10th, and 14th amendment of the United States Constitution.

148. 2C:58-4f: is invalid as applied the determination to revoke is unconstitutionally vague and vest the Superior Court Judge with uncontrolled discretion to grant, deny, or revoke firearms, and to require a private citizen to possess a permit or license who is otherwise eligible to possess a loaded and operable firearm for the purpose of self-defense is in violation of the 1st, 2nd, 5th, 8th, 9th, 10th, and 14th amendment of the United States Constitution.

149. 2C:58-5: is invalid as applied to limit or ban "firearms" and "arms", the "Public health safety and welfare" determination is unconstitutionally vague and vest the Chief Police Officers and Superior Court Judge with uncontrolled discretion to grant or deny approval of firearm applications, and to requires a private citizen to possess a permit or license who is otherwise eligible to possess a loaded and operable firearm for the purpose of self-defense is in violation of the 1st, 2nd, 5th, 8th, 9th, 10th, and 14th amendment of the United States Constitution.

150. 2C:58-6.1: To require a private citizen to possess a permit or license who is otherwise eligible to possess a loaded and operable firearm for the purpose of self-defense is in violation of the 1st, 2nd, 5th, 8th, 9th, 10th, and 14th amendment of the United States Constitution.

151. 2C:58-7: is invalid as applied to limit or ban "firearms" and "arms", allow unreasonable searches, and to requires a private citizen to possess a permit or license who is otherwise eligible to possess a loaded and operable firearm for the purpose of self-defense is in violation of the 1st, 2nd, 4th, 5th, 8th, 9th, 10th, and 14th amendment of the United States Constitution.

152. 2C:58-10: is invalid as applied to limit or ban "firearms" and "arms", and to requires a private citizen to possess a permit or license who is otherwise eligible to possess a loaded and operable firearm for the purpose of self-defense is in violation of the 1st, 2nd, 5th, 8th, 9th, 10th, and 14th amendment of the United States Constitution.

153. 2C:58-12: is invalid as applied to limit or ban "firearms" and "arms", the applications process is an invasion of privacy, and to compelled a private citizen to enforce gun regulations and to possess a permit or license who is otherwise eligible to possess a loaded and operable firearm for the purpose of self-defense is in violation of the 1st, 2nd, 4th, 5th, 8th, 9th, 10th, and 14th amendment of the United States Constitution.

154. 2C:58-15: is invalid as applied the trigger lock and lock box requirement are in violation of the 1st, 2nd, 5th, 8th, 9th, 10th, and 14th amendment of the United States Constitution.

## CAUSE OF ACTIONS

155. Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1-197 and incorporates each in all Counts.

## FIRST CAUSE OF ACTION
Violation of 42 U.S.C. § 1983

156.  On November 15, 2013, the plaintiff testified that the charges filed against his brother Tyrone Stephens would be dismissed due to Plaintiff providing evidence showing that the <u>Englewood Police Department</u> **fabricated** witnesses sworn statements, filed a false police report/complaint, and gave false testimony during a grand jury and probable cause hearing. On December 13, 2013, the case was **dismissed with prejudice** by Judge Conte.

157.  The plaintiff testified that the attorneys for Tyrone Stephens <u>forced a plea of guilt</u> against the written instructions from the plaintiff not to accept any plea deals, and that a lawsuit would be filed against the attorney to reverse the guilty plea of robbery, which the lawsuit is pending, case#: 2:14-cv-05362-WMJ-MF.

158.  The plaintiff testified that he moved his brother out of the residence due to the multiple death threats made against the family in Englewood, NJ.

159.  On February 14, 2014, Judge Jerejian **Denied** Plaintiff Marc Stephens from obtaining a firearms purchaser identification card and permits to purchase a handgun due to the Plaintiff's brother Tyrone Stephens juvenile record containing a plea of guilt for a Robbery charge, because Tyrone Stephens and the Plaintiff Marc Stephens allegedly had the same address on record, and stating Plaintiff "may take the law into his own hands" – Public Safety.

160.  Marc Stephens argued that In The Matter of the Appeal by Starr Barrett the court **granted** her application based on her testimony that her husband, Wayne Moore, would not be residing with her once he was released from prison.

161.  On August 7, 2014, the plaintiff again testified that his brother <u>is not</u> residing at the same address, and that Tyrone Stephens is living with his sister.  The plaintiff provided the court with valid proof from the USPS that Tyrone Stephens had permanently moved from the residence.

162.  In **re Appeal by Starr Barrett (N.J. App. Div. Feb. 16, 2011)**, Barrett's husband, Wayne Moore, home address had been listed as Barrett's address for four years on the law enforcement database, and according to the Division of Motor Vehicles' records, Moore's current address was also Barrett's address, despite these fact the Judge still **Granted** the permit based on Barrett's testimony that her husband would not reside with her after his release.  <u>Barrett did not provide documented proof to the court</u>.

163.  Plaintiff provided testimony supported by adequate, substantial and credible evidence showing that his brother permanently moved from the residence and would not be residing with him after his release.

164.  It is obvious that the Court made a decision based upon a palpably incorrect or irrational basis, or did not consider, or failed to appreciate the significance of probative, competent evidence submitted with the motion of reconsideration.  "if a litigant wishes to bring new or additional information to the Court's attention which it could not have provided on the first application, the Court should, in the interest of justice (and in the exercise of sound discretion), consider the evidence" **D'Atria v.  D'Atria, 242 N.J. Super. [392,] 401 (Ch. Div. 1990)**.

165.  The State cannot punish or infringe upon a Citizen's rights based on "anticipation" of an abuse of that right.  Under the deception of regulating firearms for public safety, before issuance of a gun permit plaintiff is required to be of "good character", "good repute in the community", and in order to carry a weapon the plaintiff is required to show "justifiable need" or "urgent necessity for self-protection".  If not, the plaintiff is prohibited, in other words **Banned**, from gun ownership, which is facially unconstitutional.

166.  N.J.S.A. 2C:58-3(c)(5) infringes upon the 1st, 2nd, 5th, 8th, 9th, 10th, and 14th amendment of the United States Constitution, and is facially invalid in that it vest the Chief Police Officers and Superior Court Judge with uncontrolled discretion to discriminate, grant or deny approval of firearm applications.

## SECOND CAUSE OF ACTION
Violation of 42 U.S.C. § 1983

167.  The court's Interpretation of Plaintiff's Testimony is palpably incorrect and irrational.

168.  On February 14, 2014 Judge Jerejian ruled against Marc Stephens's application based on the following closing statement by the Court.

> *Jerejian: I remember the first time you testified you indicated that these individuals who, saying who they are, you would not hesitate to use force against them.*

169.  Marc Stephens objected to the Judge's statements indicating that he "would not hesitate to use force", (Timeframe 3:52:21).  On November 15, 2013, actually the prosecutor asked the following question during Marc Stephens's testimony.

> *The prosecutor: Would you be **prepared** to use that handgun in the event a member of the Skeptics Society appeared on your property again?*
>
> *Marc Stephens: Yeah. If there's a threat I have the constitutional right to use the weapon.*

170.  The prosecutor simply asked if Marc Stephens would be "**Prepared**" to use the weapon, and Marc Stephens answered "Yes".  Being "prepared" in case of confrontation does not violate any laws.  Plaintiff also explained in detail the variation of different types of threats.

171.  The plaintiff **did not** state he would shoot the weapon.  He clearly stated if there's a threat he has the constitutional right to use the weapon.  Under New Jersey statue 2C:3-4, the plaintiff has the right to use a weapon to demand that an intruder disarm, surrender, or withdraw if he reasonably believes that personal bodily harm would be inflicted.

172.  The Second Amendment protects the individual right to keep and bear arms for the purpose of self-defense, family, and property, **District of Columbia v. Heller, 554 U.S. 570, 595, 628 (2008); see also McDonald v. City of Chicago, 130 S. Ct. 3020, 3050 (2010).** *Heller concluded, "Meaning of the Operative Clause. Putting all of these textual elements together, we find that they guarantee[s] the individual right to possess and carry weapons in case of*

*confrontation,"* a meaning that *"is strongly confirmed by the historical background of the Second Amendment."* **District of Columbia v. Heller, 554 U.S. 570 (2008).**

173. Marc Stephens has a constitutional right to keep and bear arms, at home and in public, and a right to bear arms in self-defense pursuant to New Jersey Statutes 2C:3-4, 2C:3-5, and 2C:3-6.

174. Under the deception of regulating firearms for public safety, before issuance of a gun permit plaintiff is required to be of "good character", "good repute in the community", and in order to carry a weapon the plaintiff is required to show "justifiable need" or "urgent necessity for self-protection". If not the plaintiff is prohibited, in other words **Banned**, from gun ownership, which is facially unconstitutional.

175. The State cannot punish or infringe upon a Citizen's rights based on "anticipation" of an abuse of that right. The Plaintiff has a right to freedom of expression and a right to keep and bear arms.

176. N.J.S.A. 2C:58-3(c)(5) Public Health Safety and Welfare infringes upon the 1st, 2nd, 5th, 8th, 9th, 10th, and 14th amendment of the United States Constitution, and is facially invalid in that they vest the Chief Police Officers and Superior Court Judge with uncontrolled discretion to discriminate, grant or deny approval of license applications.

### THIRD CAUSE OF ACTION
Violation of 42 U.S.C. § 1983

177. On June 4, 2013, plaintiffs received a letter from Chief Arthur O'Keefe of the Englewood Police Department denying his firearm application. The reason for the denial was not due to criminal history, age, or mental condition, but for Public Health Safety and Welfare.

178. On November 15, 2013, Sgt. Alston testified that plaintiff had no disqualifiers pursuant to **N.J.S.A. 2C:58-3(c)** based on the Englewood Police department investigation of Plaintiff's background. On cross-examination Sgt. George Alston testified the following:
> Stephens: In regards to a denial of the application based on the **welfare and safety of the public** was there anything specific in regards to convictions, mental conditions, or age restrictions that would stop the application from being approved?
> Sgt. Alston: No.

179. The chief of police denied the plaintiff's application without evidence or good cause. The chief of police bears the burden of "proving the existence of good cause for the denial by a preponderance of the evidence." **In re Appeal of Osworth, 365 N.J. Super. 72, 77 (App. Div. 2003)**.

180. Under the deception of regulating firearms for public safety, before issuance of a gun permit plaintiff is required to be of "good character", "good repute in the community", and in order to carry a weapon the plaintiff is required to show "justifiable need" or "urgent necessity for self-protection". If not the plaintiff is prohibited, in other words **Banned**, from gun ownership, which is facially unconstitutional.

181. The State cannot punish or infringe upon a Citizen's rights based on "anticipation" of an abuse of that right. The Plaintiff has a right to freedom of expression and a right to keep and bear arms.

182. N.J.S.A. 2C:58-3(c) and N.J.S.A. 2C:58-3(c)(5) infringes upon the 1st, 2nd, 5th, 8th, 9th, 10th, and 14th amendment of the United States Constitution, and is facially invalid in that they vest the Chief Police Officers and Superior Court Judge with uncontrolled discretion to grant or deny approval of license applications.

183. The chief of police or superior court judge's "hunch" or "opinion" of someone not being of good character or good repute in the community or justifiable need before issuing a permit for a firearm is an illegal pre-requisite, a prior restraint, form of censorship, form of banning firearms, form of discrimination, facially unconstitutional, and a violation of the second amendment.

### FOURTH CAUSE OF ACTION
Violation of 42 U.S.C. § 1983

184. As evident in the testimony and illustrated in the exhibits, plaintiff presented enough evidence to the court showing serious threats and earlier attacks against him and his family.

185. In plaintiffs initial brief filed August 13, 2013, plaintiff explains in the statement of facts, page 2, Section I, paragraphs 1-56, the attacks from specific individuals who were trying to locate him to cause physical harm.

186. In plaintiff's motion for reconsideration page 3, sections C, paragraphs 17-26, he details the attacks from specific individuals who were trying to locate him to cause physical harm. In plaintiffs motion for reconsideration page 4, sections D, paragraphs 27-31, plaintiff explains in similar cases around the country involving online threats, the perpetrators were arrested and served time in jail.

187. On February 14, 2014, Sgt. Fred Pulice from the Englewood Police Department testified that the threats against Marc Stephens via email and social media are "serious threats", (Audio Timeframe 3:07:02).

188. In an attempt to protect his family against this violent organization the plaintiff created videos and forwarded to the members of the skeptics society. In the video it details their criminal activity, shows FBI investigations of members, link skeptic society members involved and convicted for identity fraud, pederasty and pedophile activity, and audio of member James Randi talking on the phone with 16 year old boys arranging to meet in order to have sex. On February 14, 2014, Sgt. Fred Pulice testified that he watched the videos.

189. The skeptics society members, which is a worldwide organization, are aggressively and continuously attacking and threatening the plaintiff because he is in possession of this damaging information about their organization, and are seeking revenge. After the Plaintiff sent the video a skeptic member by the name of Kenneth P White aka ken@Popehat, sent an email to the Plaintiff stating the following: "*Marc, I cannot tell you how much I wish you had not done that. I had no idea why I was getting hate mail and links for about two days, then I read the Popehat.com blog. I am being linked to a book about families being killed, my Pinterest*

*account is being hacked and filled with images of men with machetes and wounds...*", submitted into evidence. Plaintiff testified that the Skeptics Society actions are similar to serial killers.

190. Under NJ Statue **2C:58-4**, "justifiable need," a permit to carry a handgun should only be issued to "those who can establish an urgent necessity for protection of self or others as for example, in the case of one whose life is in danger as evidenced by serious threats or earlier attacks." **Preis, supra, 118 N.J. at 566.**

191. The Plaintiffs testimony and evidence presented in exhibits are not "[g]eneralized fears for personal safety." 118 N.J. at 571 (citing Siccardi v. State, 59 N.J. 545, 557-58 (1971)). And without a doubt illustrates "'an urgent necessity . . . for self-protection'" by pointing to "specific threats or previous attacks demonstrating a special danger to the applicant's life that cannot be avoided by other means." Preis, supra, 118 N.J. at 571 (quoting Siccardi, supra, 59 N.J. at 557).

192. Judge David Ironson, sitting in Morristown, regarding Muller v. Maenza, 2:10-cv-06110, said the attack by three Missouri men demonstrated Jeffrey Muller faces a "special danger to his life" and has "an urgent need for self-protection" that justifies carrying a gun. Needs to carry a gun because of a "**revenge factor**" from his alleged kidnappers or from their friends or relatives despite the fact his alleged abductors had been apprehended. Muller might face another attack aimed at preventing him from testifying in the case against his alleged kidnappers. Muller said he needs to carry a gun because of a "revenge factor" from his alleged kidnappers or from their friends or relatives. Permit was **Granted**.

193. Under the deception of regulating firearms for public safety, before issuance of a gun permit plaintiff is required to be of "good character", "good repute in the community", and in order to carry a weapon the plaintiff is required to show "justifiable need" or "urgent necessity for self-protection". If not the plaintiff is prohibited, in other words **Banned**, from gun ownership, which is facially unconstitutional.

194. The State cannot punish or infringe upon the Plaintiff's rights based on "anticipation" of an abuse of that right. The Plaintiff has a right to freedom of expression and a right to keep and bear arms.

## FIFTH CAUSE OF ACTION
Violation of 42 U.S.C. § 1983

195. N.J. Stat. §2C:39-2, 2C:39-3, 2C:39-4, 2C:39-5, 2C:39-6, 2C:39-9, 2C:39-14, 2C:58-3, 2C:58-3b, 2C:58-3c, 2C:58-3c(5), 2C:58-3d, 2C:58-3e, 2C:58-3f, 2C:58-3h, 2C:58-3i, 2C:58-3j, 2C:58-4a, 2C:58-4b, 2C:58-4c, 2C:58-4d, 2C:58-4f, 2C:58-5, 2C:58-6.1, 2C:58-7, 2C:58-10, 2C:58-12, 2C:58-15, 2C:58-17, 2C:58-19, and related statues such as N.J.A.C. 13:54, infringes upon the 1st, 2nd, 4th, 5th, 8th, 9th, 10th, and 14th amendment of the United States Constitution, and is facially invalid in that they (1) vest the State of New Jersey, Chief Police Officers, and Superior Court Judge with uncontrolled discretion and power to grant, deny, discriminate, infringe, abridge, restrict, limit, or ban "arms", "firearms", "assault firearms", "magazine capacity", and "ammunition", (2) abridge freedom of expression, (3) infringe upon the right to keep and bear arms at home and in public, (4) invade privacy, deprives life, liberty, or property, without due process of law, (5) imposes excessive fines, inflict cruel and unusual punishments, (6) abridge the privileges or immunities of plaintiff, (7) denies equal protection of the laws, (8) are motivated by racism and discrimination, (9) burdens the plaintiff to assist with handgun regulations, which is the sole responsibility of the state, (10) unconstitutionally vague,

(11) encourage abuse of discretion, (12) violate the over breath doctrine, (13) violate the chilling effect doctrine, (14) violates the ripeness doctrine, (15) unconstitutionally burden protected conduct, (16) and have no legal standing.

196. The invalidities of the aforesaid statute and regulations, and Defendants' application of same, infringe Plaintiff and damage Plaintiff in violation of 42 U.S.C. § 1983.

197. Plaintiffs' injuries are irreparable because Plaintiff is entitled to enjoy his constitutional rights and common law rights in fact.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for the following relief:

a. declaratory judgment that N.J. Stat. §2C:39-2, 2C:39-3, 2C:39-4, 2C:39-5, 2C:39-6, 2C:39-9, 2C:39-14, 2C:58-3, 2C:58-3b, 2C:58-3c, 2C:58-3c(5), 2C:58-3d, 2C:58-3e, 2C:58-3f, 2C:58-3h, 2C:58-3i, 2C:58-3j, 2C:58-4a, 2C:58-4b, 2C:58-4c, 2C:58-4d, 2C:58-4f, 2C:58-5, 2C:58-6.1, 2C:58-7, 2C:58-10, 2C:58-12, 2C:58-15, 2C:58-17, 2C:58-19, and related statues such as N.J.A.C. 13:54, infringes upon the 1st, 2nd, 4th, 5th, 8th, 9th, 10th, and 14th amendment of the United States Constitution, and is facially invalid in that they (1) vest the State of New Jersey, Chief Police Officers, and Superior Court Judge with uncontrolled discretion and power to grant, deny, discriminate, infringe, abridge, restrict, limit, or ban "arms", "firearms", "assault firearms", "magazine capacity", and "ammunition", (2) abridge freedom of expression, (3) infringe upon the right to keep and bear arms at home and in public, (4) invade privacy, deprives life, liberty, or property, without due process of law, (5) imposes excessive fines, inflict cruel and unusual punishments, (6) abridge the privileges or immunities of plaintiff, (7) denies equal protection of the laws, (8) were motivated by racism and discrimination, (9) burdens the plaintiff to assist with handgun regulations, which is the sole responsibility of the state, (10) unconstitutionally vague, (11) encourage abuse of discretion, (12) violates the over breath doctrine, (13) violate the chilling effect doctrine, (14) violates the ripeness doctrine, (15) and have no legal standing.

b. an injunction permanently restraining Defendants and their officers, agents, servants, employees, and all persons in concert or participation with them who receive notice of this injunction, from enforcing the Firearm Laws so as to deny, infringe, abridge, restrict, limit, or ban "arms", "firearms", "assault firearms", "magazine capacity" and "ammunition" in the State of New Jersey, which actions are facially invalid under the 1st, 2nd, 4th, 5th, 8th, 9th, 10th, and 14th amendment of the United States Constitution;

c. an injunction permanently restraining Defendants and their officers, agents, servants, employees, and all persons in active concert or participation with them who receive notice of this injunction, from enforcing the Firearm Laws so as to infringe, abridge, restrict, limit, or ban firearms purchaser identification card, or applications for same, on the ground that an applicant does not have "good character", "good cause", "good repute in the community", "need", "justifiable need", "urgent necessity for self-protection", or "exemptions";

d. an injunction permanently restraining Defendants and their officers, agents, servants, employees, and all persons in active concert or participation with them who receive

notice of this injunction, from enforcing the Firearm Laws so as to <u>infringe, abridge, restrict, limit, or ban</u> the purchasing of "arms", "firearms", "assault firearms", and "ammunition", or applications for same, on the ground that an applicant <u>does not have</u> "permits", "licenses", "good character", "good cause", "good repute in the community", "need", "justifiable need", "urgent necessity for self-protection", "exemptions", and applicants **only disqualifies** as being <u>a threat</u> to public health, safety and welfare due to "criminal convictions", "drug dependent", "mental health issues", "suffers from a physical defect or disease which would make it unsafe for him to handle firearms", "age restrictions", "adjudicated delinquent", or "firearm have been seized pursuant to the "Prevention of Domestic Violence Act of 1991";

e.  an injunction permanently restraining Defendants and their officers, agents, servants, employees, and all persons in concert or participation with them who receive notice of this injunction, from enforcing Plaintiff to participate in the federal or state regulation of firearms.

f.  an injunction directing Defendants to <u>approve</u> the applications of Plaintiff Marc Stephens firearms purchaser identification card for the purchasing of "arms", "firearms", "assault firearms", and "ammunition";

g.  such other and further relief, including injunctive relief, against all Defendants, as may be necessary to effectuate the Court's judgment, or as the Court otherwise deems just and equitable;

**Dated: October 23, 2014**

Respectfully Submitted,

Marc Stephens
Plaintiff, pro se