UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

MARC A. STEPHENS,
Plaintiff,
v.

THE HON. EDWARD A. JEREJIAN, in his
Official Capacity as Judge of the Superior
Court of Bergen County;
CHIEF ARTHUR O'KEEFE, as an
individual, and in his Official Capacity as
Chief of the Englewood, New Jersey Police
Department
JOHN JAY HOFFMAN in his Official
Capacity as Attorney General of New Jersey
Defendants

CASE NO. 2:14-cv-06688-WJM-MF

PLAINTIFF'S REPLY BRIEF IN
OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS

RECEIVED APR 24 2015 AT 8:30 WILLIAM T. WALSH, CLERK

## STATEMENT OF FACTS

On January 11, 2013, Plaintiff Marc Stephens was compelled to file an application for a firearm with the Englewood Police Department. Plaintiff sent a letter to Sgt. Alston regarding multiple threats that he was receiving from several individuals aggressively trying to locate him in New Jersey. In the letter Plaintiff mentioned that he received an email indicating that his family members would be killed, and that his mother in law was found dead with a gunshot wound to her neck, and was the daughter of Ret. State House of Representative Helene Hale in Hawaii, and wife of a judge in Los Angeles. Plaintiff's application was denied by the Chief of Police, for "Public Health Safety and Welfare". The plaintiff appealed the decision with the Superior Court. During the hearings, heard in front of Defendant Hon. Judge Jerejian, Sgt. Alston of the Englewood Police Department testified that according to his background investigation Plaintiff Marc Stephens was **not a threat** to "Public Health Safety and Welfare", and Sgt. Pulice testified that the threats against Plaintiff were "**serious threats**", see plaintiff amended complaint, paragraphs 155-194. After attending multiple court hearings, which lasted over 1 year, the plaintiff application for firearm was denied by Defendant Hon. Judge Jerejian for "Public Health Safety and Welfare", see Plaintiff's Amended Complaint, paragraphs 96-116.

On October 27, 2014, the plaintiff Marc Stephens, pro se, filed a Complaint with the District Court which **facially challenged** the constitutionality of the entire New Jersey Firearm Statues enacted by its Legislature.

On April 8, 2015, the State Defendant filed a Motion To Dismiss the plaintiff's Amended Complaint pursuant to FRCP 12(b)(1) and 12(b)(6), and other arguments.

## STANDARD OF REVIEW

Federal courts are authorized to hear cases brought under section §1983 pursuant to two statutory provisions: 28 U.S.C.A. § 1343(3) (1948) and 28 U.S.C.A. § 1331 (1948). The former statute permits federal district courts to hear cases involving the deprivation of civil rights, and the latter statute permits federal courts to hear all cases involving a federal question or issue. Cases brought under section §1983 may therefore be heard in federal courts by application of both jurisdictional statutes.

The court, when faced with a Rule 12(b)(1) motion, must "start by determining whether [it is] dealing with a facial or factual attack to jurisdiction. If [it] is a facial attack, the court looks only at the allegations in the pleadings and does so in the light most favorable to the plaintiff." U.S. ex rel. Atkinson v. PA. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007); see also Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 188 (3d Cir. 2006) (in reviewing a facial challenge, the court looks "only [to] whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court"). "If [it] is a factual attack, however, it is permissible for a court to review evidence outside the pleadings." Atkinson, 473 F.3d at 514. Moreover, the trial court is free to weigh and evaluate the evidence in determining whether its jurisdiction has been demonstrated. Symczyk, 656 F.3d at 191 n.4 (citing Mortensen v. First Federal Sav. & Loan Ass'n, 549 F.2d at 891).

## ARGUMENT

### Point I

<u>The United States Constitution is the supreme law of the land</u>

The defendant argues that the plaintiff's complaint should be dismissed because the Third Circuit Court of Appeals and the New Jersey Appellate Division have already determined that the New Jersey's firearm licensing statues are constitutional. In majority of the cases challenging the New Jersey Firearm Statue leading up to Drake v Jerejian, all parties argued a <u>specific statue</u> that they believed was unconstitutional. For example, in Drake v Jerejian, the plaintiff argued that the "Justifiable need" and "urgent necessity" standard was unconstitutional. The plaintiff Marc Stephens's amended complaint in, **Sections A-E, paragraphs 27-95**, is challenging the <u>entire</u> New Jersey Firearm Licensing Statues as being facially unconstitutional due to it being passed through legislature based on **racism and discrimination**. Plaintiff's argument invokes the **strict scrutiny** review, whereas in Drake v Jerejian the Third Circuit Court of Appeals and the New Jersey Appellate Division decision was based on <u>intermediate scrutiny</u>:

> "Here, we conclude that the requirement that applicants demonstrate a
> "justifiable need" to publicly carry a handgun for self-defense qualifies as

a "presumptively lawful," "longstanding" regulation and therefore does not burden conduct within the scope of the Second Amendment's guarantee. Accordingly, we need not move to the second step of Marzzarella. Nevertheless, because of the important constitutional issues presented, we believe it to be beneficial and appropriate to consider whether the "<u>justifiable need</u>" standard withstands the applicable **<u>intermediate level of scrutiny</u>**". Opinion of the court, Third Circuit Court of Appeals.

The plaintiff clearly argues in his complaint; **<u>section B, paragraphs 57-67</u>**, that New Jersey <u>refuses to acknowledge</u> Heller's and McDonald's ruling on the Right to Keep and Bear Arms at home and in public. More specifically in <u>paragraphs 59-61</u>:

> 59. In a line of decisions, however, the Supreme Court has recognized that a right to keep and bear arms **<u>in public</u>** <u>does</u> exist under the Constitution. Quoting Heller, "At the time of the founding, as now, to "bear" meant to "carry." See Johnson 161; Webster; T. Sheridan, A Complete Dictionary of the English Language (1796); 2 Oxford English Dictionary 20 (2d ed. 1989) (hereinafter Oxford). When used with <u>"arms,"</u> however, the term has a meaning that <u>refers to carrying for a particular purpose—confrontation</u>. In Muscarello v. United States, 524 U. S. 125 (1998), in the course of analyzing the meaning of <u>"carries a firearm"</u> in a federal criminal statute, Justice Ginsburg wrote that "[s]urely a most familiar meaning is, as the Constitution's <u>Second Amendment ... indicate[s]</u>: '**<u>wear, bear, or carry ... upon the person or in the clothing or in a pocket</u>**, <u>for the purpose ... of being armed and ready for offensive or defensive action in a case of conflict with another person.</u>' " Id., at 143 (dissenting opinion) (quoting Black's Law Dictionary 214 (6th ed. 1998)). <u>We think that Justice Ginsburg accurately captured the natural meaning of</u> "bear arms."

> 60. Quoting Heller (and McDonald v. City of Chicago, Ill., 130 S. Ct. 3020 (2010)) did far more than recognize a right to possess handguns in the home for self-defense. Rather, they confirmed that the Second Amendment secures (not "creates") an individual, natural right of armed defense, Heller, 554 U.S. at 598-99, and that <u>at the core of this guarantee is the right to keep and bear arms for "defense of self, family, and **property**</u>." Id. at 591-594; McDonald, 130 S. Ct. at 3048 (the "inherent right of self-defense has been <u>central</u> to the Second Amendment right").

> 61. As opinion by Judges Grall, "In each of the instances covered by the foregoing exceptions, a lawful reason, or need, for having a handgun is obvious: <u>keeping or transporting a handgun for lawful use; using it in lawful defense of home, family and **property**</u>; using it recreationally or for training where that conduct is lawful; and transporting it, secured, in connection with acquisition, maintenance or use for one of the lawful purposes". (quoting In The Matter Of Application of Jonathan R. Wheeler). Article I of New Jersey's Constitution reads: "All persons are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and <u>defending life and liberty,</u>

of acquiring, possessing, and protecting **property**, and of pursuing and obtaining safety and happiness".

The right to keep and bear arms is a "fundamental", "central", "legal", and "core" right under the United State Constitution, and New Jersey's Constitution. New Jersey's Legislature enacted their firearm law by using stealthy language in order to keep firearms out the hands of "slaves" and "African-Americans", see Plaintiff's amended complaint, paragraphs 27-95. It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon, **Boyd v. United States, 116 US 616 - Supreme Court 1886 at 635**.

"The Government may not prohibit or control the conduct of a person for reasons that infringe upon constitutionally guaranteed freedoms", **Smith v. United States, 502 F. 2d 512 - Court of Appeals, 5th Circuit 1974 at 516**. To punish a person because he has done what the law plainly allows him to do is a due process violation "of the most basic sort." Bordenkircher v. Hayes, 434 U. S. 357, 434 U. S. 363. In a series of cases beginning with North Carolina v. Pearce and culminating in Bordenkircher v. Hayes, the Court has recognized this basic -- and itself uncontroversial -- principle. For while an individual certainly may be penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right. **United States v. Goodwin, 457 U.S. 368 (1982) at 372-373.**

"[F]or an agent of the State to pursue a course of action whose objective is to penalize a person's reliance on his legal rights is 'patently unconstitutional.'" Bordenkircher v. Hayes, 434 U. S. 357, 434 U. S. 363 (quoting Chaffin v. Stynchcombe, 412 U. S. 17, 412 U. S. 323, n. 20). **United States v. Goodwin, 457 U.S. 368 (1982) at Footnote #4.** It is well settled that, quite apart from the guarantee of equal protection, if a law "impinges upon a fundamental right explicitly or implicitly secured by the Constitution [it] is presumptively unconstitutional." Mobile v. Bolden, 446 U. S. 55, 76 (plurality opinion). **Harris v. McRae, 448 US 297 - Supreme Court 1980 at 312.**

"The State cannot choose means that unnecessarily burden or restrict constitutionally protected activity", **Dunn v. Blumstein, 405 US 330 - Supreme Court 1972, at 343**.

In order to convince the court to apply strict scrutiny, it is necessary to show that the state's action was "motivated by a discriminatory" purpose, see plaintiff's amended complaint, paragraphs 27-95, which discussed the history of New Jersey, the second amendment, and firearm regulations which argument satisfies the strict scrutiny application to strike down New Jersey's facially unconstitutional firearm statues. "Today, no less than 50 years ago, the solution to the problems growing out of race relations "cannot be promoted by depriving citizens of their

constitutional rights and privileges," Buchanan v. Warley, supra, 245 U. S., at 80-81, **Watson v. Memphis, 373 US 526 - Supreme Court 1963 at 539**.

The factual basis for the New Jersey Legislature's longstanding perception of the danger inherent in widespread handgun possession in public places was addressed in <u>Siccardi v. State, 284 A. 2d 533 - NJ: Supreme Court 1971 at 549-53</u>. Article 6 clause 3 of the United States Constitution requires that all who hold office in the United States take an oath to uphold the United States Constitution and declares the Constitution is the "<u>supreme law of the land</u>," and reinforces the requirement that judges are bound by it:

"This Constitution…shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

The **Second Amendment** provides: A well-regulated Militia, being necessary to the security of a free State, <u>the right of the people to keep and bear Arms, shall not be infringed</u>. District of Columbia v. Heller (2008) and McDonald v. Chicago (2010) clearly restored the 2nd amendment <u>individual rights</u> that were taken away by the rulings of previous courts including United States v. Cruikshank (1876), and United States v. Miller (1939).

Federal judges must apply the Constitution and the precedents of the Supreme Court regardless of what each judge might believe as a matter of policy or principle. **See Texas v. Johnson, 491 U.S. 397, 420–21 (1989) (Kennedy, J., concurring)** ("The hard fact is that sometimes we must make decisions we do not like. We make them because they are right, right in the sense that the law and the Constitution, as we see them, compel the result."). No matter how laudable the end, the Supreme Court has long made clear that the Constitution disables the government from employing certain means to prevent, deter, or detect violent crime. **See, e.g., United States v. Jones, 132 S. Ct. 945 (2012); Kennedy v. Louisiana, 554 U.S. 407 (2008); Kyllo v. United States, 533 U.S. 27 (2001); Miranda v. Arizona, 384 U.S. 436 (1966); Mapp v. Ohio, 367 U.S. 643 (1961); see also Heller II, 670 F.3d at 1296 (Kavanaugh, J., dissenting).**

The Court has been equally clear that Federal Judges must enforce constitutional rights even when they have "controversial public safety implications." **McDonald, 130 S. Ct. at 3045** (controlling opinion of Alito, J.); **see also Heller, 128 S. Ct. 2783 at 2822** ("We are aware of the problem of handgun violence in this country, and we take seriously the concerns raised by the many amici who believe that prohibition of handgun ownership is a solution. . . . But the enshrinement of constitutional rights necessarily takes certain policy choices off the table.").

The right to keep and bear arms, however, is not the only constitutional right that has controversial public safety implications. All of the constitutional provisions that impose

restrictions on law enforcement and on the prosecution of crimes fall into the same category. **See, e.g., Hudson v. Michigan, 547 U. S. 586, 591 (2006)** ("The exclusionary rule generates 'substantial social costs,' **United States v. Leon, 468 U. S. 897, 907 (1984)**, which sometimes include setting the guilty free and the dangerous at large"); **Barker v. Wingo, 407 U. S. 514, 522 (1972)** (reflecting on the serious consequences of dismissal for a speedy trial violation, which means "a defendant who may be guilty of a serious crime will go free"); **Miranda v. Arizona, 384 U. S. 436, 517 (1966) (Harlan, J., dissenting); id., at 542 (White, J., dissenting)** (objecting that the Court's rule "[i]n some unknown number of cases ... will return a killer, a rapist or other criminal to the streets ... to repeat his crime"); **Mapp, 367 U. S., at 659**.

## Point II

<u>The Pennhurst doctrine does not provide Defendants with Eleventh Amendment immunity.</u>

The defendant argues that the Federal District Court lacks jurisdiction to enjoin State Defendants from enforcing state law, pursuant to the Eleventh Amendment of the Federal Constitution, and the Pennhurst Doctrine. Under the **<u>abrogation doctrine</u>**, while Congress cannot use its Article I powers to subject states to lawsuits in federal courts, <u>Seminole Tribe v. Florida</u>, 517 U.S. 44 (1996), it can abrogate a state's sovereign immunity pursuant to the powers granted to it by <u>§5 of the Fourteenth Amendment,</u> and thus subject them to lawsuits by overriding states' Eleventh Amendment immunity. **Fitzpatrick v. Bitzer, 427 US 445 - Supreme Court 1976 at 456-457. Nevada Department of Human Resources v. Hibbs, 538 U.S. 721 (2003)**.

In McDonald v. Chicago (2010), the Court clarified its earlier decisions that limited the amendment's impact to a restriction on the federal government, expressly holding that the Fourteenth Amendment applies the Second Amendment to <u>state and local governments</u> to the same extent that the Second Amendment applies to the federal government.

The plaintiff's complaint is <u>clearly</u> addressing how New Jersey's Firearm statues, and state officials, are violating **federal law**, not state law, <u>see plaintiff's Amended Complaint, paragraphs 1-18</u>. "If the plaintiff alleges the state official's conduct violates <u>federal law</u>, then federal court is the appropriate forum to adjudicate the dispute". **Ex parte Young, 209 U.S. 123, 167 (1908)**.

In addition, the plaintiff complaint is facially attacking the <u>entire</u> New Jersey Firearm Statues as Unconstitutional based on being enacted by <u>racism and discrimination</u>. As discussed in <u>Point I</u>, Plaintiff's facial challenge requires a <u>strict scrutiny review</u>, whereas in previous decision the Third Circuit Court of Appeals and the New Jersey Appellate Division opinion was based on <u>intermediate scrutiny.</u>

### Point III

<u>The Rooker-Feldman doctrine only applies when the action taken by the state body is Judicial.</u>

Defendant is trying to dupe the court into believing that the plaintiff is attempting to file an appeal with the District Court based on state court proceedings, and that the Rooker-Feldman doctrine prohibits the District Court from exercising Jurisdiction. The plaintiff § 1983 claim is regarding the constitutionality of New Jersey's <u>legislature</u> regulation of Firearms. Plaintiff Marc Stephens clearly has inserted into his complaint a "<u>general attack or challenge</u>" on the constitutionality of New Jersey's Firearm Laws passed through its <u>Legislature</u>. In the "**INTRODUCTION**" of plaintiff's amended complaint, **see paragraph 1-18**, it clearly discuss the nature of the pleading. More specifically, <u>Paragraph #2</u> states as follow:

> 2. The State of New Jersey's Firearm Laws, including but not limited to: N.J. Stat. §2C:39-2, 2C:39-3, 2C:39-4, 2C:39-5, 2C:39-6, 2C:39-9, 2C:39-14, 2C:58-3, 2C:58-3b, 2C:58-3c, 2C:58-3c(5), 2C:58-3d, 2C:58-3e, 2C:58-3f, 2C:58-3h, 2C:58-3i, 2C:58-3j, 2C:58-4a, 2C:58-4b, 2C:58-4c, 2C:58-4d, 2C:58-4f, 2C:58-5, 2C:58-6.1, 2C:58-7, 2C:58-10, 2C:58-12, 2C:58-15, 2C:58-17, 2C:58-19, and related statues such as N.J.A.C. 13:54, are all <u>facially unconstitutional</u> because each statue was <u>motivated by</u> and passed through **legislature** based on <u>racism and discrimination</u> which are violations of the First, Second, Fourth, Fifth, Eighth, Ninth, Tenth, and Fourteenth Amendments of the United States Constitution.

The plaintiff's **STATEMENT OF FACTS** from <u>Sections A-E, paragraphs 27-95</u>, is also a "general facial challenge" on the constitutionality of New Jersey's Firearm Laws passed through its Legislature. <u>Section F, paragraphs 96-116</u>, briefly discusses the background of the plaintiff's firearm application process and the outcome of the hearings. **CONSTITUTIONAL PROVISIONS** are discussed in <u>Paragraphs 117-124</u>, In <u>Paragraphs 125-154</u>, the plaintiff discusses the <u>specific state law statues</u> that are facially unconstitutional.

Again, the facial challenge of New Jersey's state law is covered in the plaintiff's fifth cause of action as such:

**FIFTH CAUSE OF ACTION**
Violation of 42 U.S.C. § 1983

> 195. N.J. Stat. §2C:39-2, 2C:39-3, 2C:39-4, 2C:39-5, 2C:39-6, 2C:39-9, 2C:39-14, 2C:58-3, 2C:58-3b, 2C:58-3c, 2C:58-3c(5), 2C:58-3d, 2C:58-3e, 2C:58-3f, 2C:58-3h, 2C:58-3i, 2C:58-3j, 2C:58-4a, 2C:58-4b, 2C:58-4c, 2C:58-4d, 2C:58-4f, 2C:58-5, 2C:58-6.1, 2C:58-7, 2C:58-10, 2C:58-12, 2C:58-15, 2C:58-17, 2C:58-19, and related statues such as N.J.A.C. 13:54, infringes upon the 1st, 2nd, 4th, 5th, 8th, 9th, 10th, and 14th amendment of the United States Constitution, and is **facially invalid** in that they (1) vest the State of New Jersey, Chief Police Officers, and Superior Court Judge with uncontrolled discretion and power to grant,

deny, discriminate, infringe, abridge, restrict, limit, or ban "arms", "firearms", "assault firearms", "magazine capacity", and "ammunition", (2) abridge freedom of expression, (3) infringe upon the right to keep and bear arms at home and in public, (4) invade privacy, deprives life, liberty, or property, without due process of law, (5) imposes excessive fines, inflict cruel and unusual punishments, (6) abridge the privileges or immunities of plaintiff, (7) denies equal protection of the laws, (8) are motivated by racism and discrimination, (9) burdens the plaintiff to assist with handgun regulations, which is the sole responsibility of the state, (10) unconstitutionally vague, (11) encourage abuse of discretion, (12) violate the over breath doctrine, (13) violate the chilling effect doctrine, (14) violates the ripeness doctrine, (15) unconstitutionally burden protected conduct, (16) and have no legal standing.

196. The invalidities of the aforesaid statute and regulations, and Defendants' application of same, infringe Plaintiff and damage Plaintiff in violation of 42 U.S.C. § 1983.

197. Plaintiffs' injuries are irreparable because Plaintiff is entitled to enjoy his constitutional rights and common law rights in fact.

Once Again, the facial challenge of New Jersey's firearm law is covered in the plaintiff's prayer for relief in paragraph "a" and "g" as such:

    a.    declaratory judgment that N.J. Stat. §2C:39-2, 2C:39-3, 2C:39-4, 2C:39-5, 2C:39-6, 2C:39-9, 2C:39-14, 2C:58-3, 2C:58-3b, 2C:58-3c, 2C:58-3c(5), 2C:58-3d, 2C:58-3e, 2C:58-3f, 2C:58-3h, 2C:58-3i, 2C:58-3j, 2C:58-4a, 2C:58-4b, 2C:58-4c, 2C:58-4d, 2C:58-4f, 2C:58-5, 2C:58-6.1, 2C:58-7, 2C:58-10, 2C:58-12, 2C:58-15, 2C:58-17, 2C:58-19, and related statues such as N.J.A.C. 13:54, infringes upon the 1st, 2nd, 4th, 5th, 8th, 9th, 10th, and 14th amendment of the United States Constitution, and is facially invalid in that they (1) vest the State of New Jersey, Chief Police Officers, and Superior Court Judge with uncontrolled discretion and power to grant, deny, discriminate, infringe, abridge, restrict, limit, or ban "arms", "firearms", "assault firearms", "magazine capacity", and "ammunition", (2) abridge freedom of expression, (3) infringe upon the right to keep and bear arms at home and in public, (4) invade privacy, deprives life, liberty, or property, without due process of law, (5) imposes excessive fines, inflict cruel and unusual punishments, (6) abridge the privileges or immunities of plaintiff, (7) denies equal protection of the laws, (8) were motivated by racism and discrimination, (9) burdens the plaintiff to assist with handgun regulations, which is the sole responsibility of the state, (10) unconstitutionally vague, (11) encourage abuse of discretion, (12) violates the over breath doctrine, (13) violate the chilling effect doctrine, (14) violates the ripeness doctrine, (15) and have no legal standing.

    g.    such other and further relief, including injunctive relief, against all Defendants, as may be necessary to effectuate the Court's judgment, or as the Court otherwise deems just and equitable;

The Rooker-Feldman doctrine only applies when the action taken by the state body is judicial, and not **legislative, ministerial, or administrative**, in nature. **District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 479, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983).** In Feldman, the issue was regarding the rejection of his application for a legal license with the state bar. A determination that the proceedings on plaintiff's claims were judicial does not finally dispose of this case. **Id at 483.** The District Court has jurisdiction over elements of plaintiff's complaint that involve a general challenge to the constitutionality of [New Jersey's Firearm Laws], **Id. at 488**.

A Judge of the Superior Court or Chief of Police, may act in a non-judicial capacity in promulgating rules regulating the issuance of a firearm application of any interested person. Despite Sgt. Alston of the Englewood Police Department testifying that according to his background investigation Plaintiff Marc Stephens was **not a threat** to "Public Health Safety and Welfare" pursuant to [N.J.S.A. 2C:58-3(c)], and Sgt. Pulice testifying that the threats against Plaintiff were "**serious threats**" [NJ Statue 2C:58-4], Defendants Judge Jerejian and Chief O'keefe made a decision to **reject** the plaintiff's firearm application based on their own discretion, which is more of an administrative capacity. Plaintiff's firearm application was denied three times for "Public Health Safety and Welfare", see plaintiff's Amended Complaint, Exhibit A, B, C, which under N.J. Stat. § 2C:58-3c allows either Defendant to decide if plaintiff is a person of "good character" or "good repute in the community".

The United States Court of Appeals, Second Circuit, have recognized that Judges may act in a non-judicial capacity in promulgating rules regulating firearms. *"Judge Bartlett's decision appears to have been taken in an administrative capacity"*, **Osterweil v. Bartlett, 706 F. 3d 139 - Court of Appeals, 2nd Circuit 2013, footnote #2.** Challenges to the constitutionality of state [firearm laws], therefore, do not necessarily require a United States District Court to review a final state-court judgment in a judicial proceeding. Instead, the District Court may simply be asked to assess the validity of a rule promulgated in a non-judicial proceeding. If this is the case, the district court is not reviewing a state-court judicial decision. United States District Courts, therefore, have subject-matter jurisdiction over general challenges to state [firearm laws] promulgated by state courts in non-judicial proceedings, which do not require review of a final state-court judgment in a particular case. **District of Columbia Court of Appeals v. Feldman, 460 US 462 - Supreme Court 1983 at 486.**

"When the question of the validity of a State statute with reference to the Federal Constitution has been first raised in a Federal court, that court has the right to decide it to the exclusion of all other courts". **Ex Parte Young, 209 U.S. 123 (1908) at 125.** "In short, the

federal courts could step in where the state courts were unable or unwilling to protect federal rights", **Allen v. McCurry, 449 US 90 - Supreme Court 1980 at 101.**

### Point IV

Defendant are Held accountable for their connection with the enforcement of an Act.

"Constitutional torts" 42 U.S.C. § 1983 allows state officials to be sued in their individual or official capacities, a principle which was demonstrated again in **Brandon v. Holt, 469 U.S. 464 (1984).** It is not necessary that the duty of a State officer to enforce a statute be declared in that statute itself in order to permit his being joined as a party defendant from enforcing it; if, by virtue of his office, he has some connection with the enforcement of the act, it is immaterial whether it arises by common general law or by statute. **Id at Page 209 U. S. 124-125.**

State judges, as well as federal, have the responsibility to respect and protect persons from violation of federal constitutional rights, **Goss v. State of Illinois, 312 F. 2d 257 - Court of Appeals, 7th Circuit 1963 at 259.** "While the courts cannot control the exercise of the discretion of an executive officer, an injunction preventing such officer from enforcing an unconstitutional statute is not an interference with his discretion". **Ex Parte Young, 209 U.S. 123 (1908) at 125.** "The Attorney General of the State of [New Jersey], under his common law power and the state statutes, has the general authority imposed upon him of enforcing constitutional statutes of the State, and is a proper party defendant to a suit brought to prevent the enforcement of a State statute on the ground of its unconstitutionality", **Id at 125.** "The Federal court may enjoin an individual or a state officer from enforcing a state statute on account of its unconstitutionality". **Id at 125.**

### CONCLUSION

In light of the foregoing, Plaintiff's Amended Complaint invokes the Jurisdiction of the Federal District Court on the grounds that New Jersey Firearm Licensing Statues are facially unconstitutional due to it being passed through legislature based on racism and discrimination. Defendant's Motion to Dismiss should be denied, and Plaintiff's Motion in Opposition of Defendants' Motion to Dismiss should be **Granted**.

Respectfully submitted,

Marc Stephens
Plaintiff
201-598-6268

Dated: April 15, 2015

## TABLE OF CONTENT

**STATEMENT OF FACTS**..................................................................................................................1

**STANDARD OF REVIEW**................................................................................................................ 2

**ARGUMENT**..................................................................................................................................... 2

Point I: The United States Constitution is the supreme law of the land............................................. 2

Point II: The Pennhurst doctrine does not provide Defendants with
Eleventh Amendment immunity............................................................................................. 6

Point III: The Rooker-Feldman doctrine only applies when the action taken
by the state body is Judicial................................................................................................... 7

Point IV: Defendant are Held accountable for their connection with the
enforcement of an Act............................................................................................................ 10

**CONCLUSION**................................................................................................................................. 10

Case 2:14-cv-06688-WJM-MF   Document 15-1   Filed 04/24/15   Page 12 of 13 PageID: 150

# TABLE OF AUTHORITIES

| Authority | Page |
|---|---|
| U.S. ex rel. Atkinson v. PA. Shipbuilding Co., 473 F.3d 506, 514 (3d Cir. 2007) | 2 |
| Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 188 (3d Cir. 2006) | 2 |
| Symczyk, 656 F.3d at 191 | 2 |
| Boyd v. United States, 116 US 616 - Supreme Court 1886 at 635. | 4 |
| Smith v. United States, 502 F. 2d 512 - Court of Appeals, 5th Circuit 1974 at 516 | 4 |
| United States v. Goodwin, 457 U.S. 368 (1982) at 372-373 | 4 |
| United States v. Goodwin, 457 U.S. 368 (1982) at Footnote #4 | 4 |
| Harris v. McRae, 448 US 297 - Supreme Court 1980 at 312 | 4 |
| Dunn v. Blumstein, 405 US 330 - Supreme Court 1972, at 343 | 4 |
| Watson v. Memphis, 373 US 526 - Supreme Court 1963 at 539 | 5 |
| Siccardi v. State, 284 A. 2d 533 - NJ: Supreme Court 1971 at 549-53 | 5 |
| Texas v. Johnson, 491 U.S. 397, 420–21 (1989) | 5 |
| United States v. Jones, 132 S. Ct. 945 (2012) | 5 |
| Hudson v. Michigan, 547 U. S. 586, 591 (2006) | 6 |
| United States v. Leon, 468 U. S. 897, 907 (1984) | 6 |
| Barker v. Wingo, 407 U. S. 514, 522 (1972) | 6 |
| Miranda v. Arizona, 384 U. S. 436, 517 (1966) | 6 |
| Fitzpatrick v. Bitzer, 427 US 445 - Supreme Court 1976 at 456-457. | 6 |
| Nevada Department of Human Resources v. Hibbs, 538 U.S. 721 (2003). | 6 |
| Ex parte Young, 209 U.S. 123, 167 (1908) | 6,9,10 |
| District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, (1983) | 9 |
| Osterweil v. Bartlett, 706 F. 3d 139 - Court of Appeals, 2nd Circuit 2013, footnote #2 | 9 |
| District of Columbia Court of Appeals v. Feldman, 460 US 462 - Supreme Court 1983 at 486 | 9 |
| Allen v. McCurry, 449 US 90 - Supreme Court 1980 at 101 | 10 |
| Brandon v. Holt, 469 U.S. 464 (1984) | 10 |
| Goss v. State of Illinois, 312 F. 2d 257 - Court of Appeals, 7th Circuit 1963 at 259 | 10 |

STEPHENS
271 ROSEMONT PL
ENGLEWOOD, NJ 07631

CLERK'S OFFICE
US Court House & FEO Building
50 Walnut Street
Newark, NJ 07101
CASE #: 2:14-cv-06688-WJM-MF

RECEIVED APR 24 2