# Marc A. Stephens

271 Rosemont Place, Englewood, NJ 07631, 201-598-6268

September 26, 2015

**RECEIVED**

Judge William J. Martini
Martin Luther King, Jr.
U.S. Courthouse and Federal Building
50 Walnut Street
Newark, NJ 07101

SEP 2 8 2015

AT 8:30_____M
WILLIAM T. WALSH, CLERK

## RE: Marc Stephens vs Edward Jerejian, et el Civil Complaint 2:14-cv-06688-WJM-MF

Dear Judge William J. Martini,

I submitted enough factual information to survive a motion to dismiss, and proceed to discovery. I raised the argument that I was injured when I was denied a permit or license to purchase firearms and that New Jersey permit and license laws are facially unconstitutional. It appears that the argument that the New Jersey Firearm laws were passed based on racism and discrimination has **never** been raised in New Jersey courts. I have standing because I was denied a fundamental right to keep and bear arms, **see ECF document 19**. "One can challenge a licensing statute which endangers freedom of expression whether or not his conduct could be prohibited by a properly drawn statute and whether or not he applied for a license", **Freedman v. Maryland, 380 U.S. 51 (1965).** I substantially complied with local rules, and the case should not be dismissed based on a technicallty, The doctrine of substantial compliance is used by courts to "avoid technical defeats of valid claims," Zamel v. Port of New York Auth., 56 N.J. 1, 6, 264 A.2d 201 (1970). "[T]here is no legislative interest in barring meritorious claims brought in good faith[.]" Ferreira, supra, 178 N.J. at 150-51, 836 A.2d 779 (quoting Galik v. Clara Maass Med. Ctr., 167 N.J. 341, 359, 771 A.2d 1141 (2001)). Indeed, the Legislature did not intend "to `create a minefield of hyper-technicalities in order to doom innocent litigants possessing meritorious claims.'" Ryan, supra, 203 N.J. at 51, 999 A.2d 427 (quotation omitted).

Respectfully submitted,

Marc Stephens
Plaintiff
201-598-6268

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of September, 2015, I mailed a copy to the Clerk of Court who will then file the attached documents using the CM/ECF system, which will then send a notification to the following:

Adam Robert Gibbons, DAG: Adam.Gibbons@dol.lps.state.nj.us

## Marc A. Stephens

271 Rosemont Place, Englewood, NJ 07631, 201-598-6268

September 26, 2015

Honorable Judge William J. Martini
NJ District Court

### REQUEST FOR RECONSIDERATION AND/OR
### PERMISSION TO AMEND THE COMPLAINT

**RE: Marc Stephens vs Edward Jerejian, et el Civil Complaint 2:14-cv-06688-WJM-MF**

Dear Judge Martini,

Plaintiff motion for reconsideration should be approved to correct a clear error of law and to prevent manifest injustice. If a litigant wishes to bring "additional information" to the Court's attention the Court should, in the interest of justice (and in the exercise of sound discretion), consider the evidence" 1) the Court has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the Court either did not consider, or failed to appreciate the significance of probative, competent evidence. **Cummings v. Bahr, 295 N.J.Super. 374, 384, 685 A.2d 60 (App.Div.1996) D'Atria v. D'Atria, 242 N.J. Super. [392,] 401 (Ch. Div. 1990). Bermingham v. Sony Corp. of Am., 820 F. Supp. 834, 856 (D.N.J. 1993), Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985),**

The Court dismissed the plaintiff's complaint with prejudice for the following reasons:

**(1)** *"The Supreme Court has repeatedly rejected the claim that the Second Amendment includes an unqualified right to possess a firearm. See District of Columbia v. Heller, 554 U.S. 570, 626-27 (2008) (holding that there are longstanding and presumptively lawful qualifications and conditions on the sale and possession of firearms); see also McDonald v. City of Chicago, 561 U.S. 742, 786 (2010) (incorporating the Court's holdings in Heller through the Fourteenth Amendment).* **(2)** *Further, the Rooker-Feldman Doctrine bars the Court's review of Plaintiff's "as-applied" challenge to the state court proceedings,* **see ECF document 19**.

The court's decision is based upon a palpably incorrect or irrational basis of the Supreme Court ruling in Heller and McDonald, as well as other Supreme Court rulings. In the interest of justice, the plaintiff would like to respectfully provide the court with "additional information" regarding the Second Amendment right, which is a <u>fundamental right</u> that the state cannot infringe upon. In addition, NJ firearm Permit and Licensing laws are facially unconstitutional because they passed through legislature based on racism and discrimination of "black citizens".

**ARGUMENT**

## 1.  THE STATE CANNOT INTERFERE WITH THE RIGHT OF THE CITIZEN TO KEEP AND BEAR ARMS

"[T]he State cannot interfere with the right of the citizen to keep and bear arms. The right to keep and bear arms is included in the fourteenth amendment, under `privileges and immunities.'" Proceedings in the Ku Klux Trials at Columbia, S. C., in the United States Circuit Court, November Term, 1871, p. 147 (1872)", **McDonald v. City of Chicago, Ill., 130 S. Ct. 3020, at 3077-3083**. When the Supreme Court stated, "longstanding and presumptively lawful qualifications and conditions on the sale and possession of firearms", they are clearly referring to the commercial sale of firearms by manufactures, and the abuse of the second amendment right, as proven further below.

## 2.  THE RIGHT TO KEEP AND BEAR ARMS IS A GUARANTEED AND FUNDAMENTAL RIGHT

In Heller and McDonald, the court recognized the right to keep and bear arms to be **fundamental.** "The right to keep and bear arms was "one of the **fundamental rights** of Englishmen," **McDonald v. City of Chicago, Ill., 130 S. Ct. 3020 - Supreme Court 2010 at 3036, 3037, 3040, 3041, 3042, 3046, 3061, 3064, 3068, 3073, 3131.** "It cannot be doubted that the right to bear arms was regarded as a substantive guarantee", **McDonald v. City of Chicago, Ill., 130 S. Ct. 3020 - Supreme Court 2010 at 3043.** "The right to keep and bear arms applies to the States through the Fourteenth Amendment's Due Process Clause because it is "**fundamental**" to the American "scheme of ordered liberty," ante, at 3036 (citing Duncan v. Louisiana, 391 U.S. 145, 149, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968)), and "`deeply rooted in this Nation's history and tradition,'" ante, at 3036 (quoting Washington v. Glucksberg, 521 U.S. 702, 721, 117 S.Ct. 2302, 138 L.Ed.2d 772 (1997)), **McDonald v. City of Chicago, Ill., 130 S. Ct. 3020 - Supreme Court 2010 at 3059.**

("[I]t has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a pre-existing right"). District of Columbia v. Heller, 128 S. Ct. 2783 - Supreme Court 2008 at 2797; **McDonald v. City of Chicago, Ill., 130 S. Ct. 3020 - Supreme Court 2010 at 3066.** See Commonwealth v. Blanding, 20 Mass. 304, 314 (1825) ("The liberty of the press was to be unrestrained, but he who used it was to be responsible in case of its abuse; like the right to keep fire arms, which does not protect him who uses them for annoyance or destruction."); **Respublica v. Oswald, 1 US 319 - Supreme Court 1788 at 329** ("The right of publication, like every other right, has its natural and necessary boundary; for,

though the <u>law allows a man the free use of his arm</u>, or the <u>possession of a weapon</u>, yet it does not authorize him to plunge a dagger in the breast of an inoffensive neighbor."). **Id at 329**. "The right to keep and bear arms is <u>guaranteed</u> by the Fourteenth Amendment as a privilege of American citizenship", **McDonald v. City of Chicago, Ill., 130 S. Ct. 3020 - Supreme Court 2010 at 3088.**

## 3. CITIZENS DO NOT NEED A PERMIT OR LICENSE TO EXERCISE GUARANTEED AND FUNDAMENTAL CONSTITUTIONAL RIGHTS

In **Zablocki v. Redhail, 434 U.S. 374 (1978)** the U.S. Supreme Court decision held that Wisconsin Statutes §§ 245.10 (1), (4), (5) (1973) <u>violated</u> the Fourteenth Amendment equal protection clause. Section 245.10 required noncustodial parents who were Wisconsin residents attempting to marry inside or outside of Wisconsin to <u>seek a court order</u> prior to receiving a <u>marriage **license**</u>. In order to receive such a court order, the noncustodial parent could not be in arrears on his or her child support, and the court had to believe that the child(ren) would not become dependent on the State. <u>Marriage</u>, just like the right to keep and bear arms, was held to be a **fundamental right**. On the merits, the three-judge panel analyzed the challenged statute under the Equal Protection Clause and concluded that "**strict scrutiny**" was required because the classification created by the statute **infringed upon a fundamental right**, the right to marry, **Id at 381.** "Since the means selected by the State for achieving these interests unnecessarily impinge on the right to marry, the statute <u>cannot</u> be sustained", **Id at 388.** The "right to marry" and "the right to carry" firearms are <u>fundamental rights</u>.

Just like Wisconsin license Statue, New Jersey Firearm Statues are <u>forcing</u> citizens to obtain <u>court approval</u> before obtaining a <u>permit or license</u> to keep and bear arms, which are facially unconstitutional. "Permits to carry handguns are "the most closely regulated aspect" of New Jersey's <u>gun control laws</u>. In re Preis, 118 N.J. 564, 573 A.2d 148, 150 (1990). Individuals who wish to carry a handgun in public for self-defense <u>must first obtain a license</u>. N.J.S.A. § 2C:39-5(b)", **see Drake v. Filko, 724 F. 3d 426 - Court of Appeals, 3rd Circuit 2013 at 428-429**. "The **state cannot "enact any gun control law**" that they deem to be reasonable. Time and again, however, those pleas failed. Unless we turn back the clock or adopt a special incorporation test applicable <u>only to the Second Amendment</u>, municipal respondents' argument <u>must be rejected</u>", **McDonald v. City of Chicago, Ill., 130 S. Ct. 3020 - Supreme Court 2010 at 3046.**

The predictive judgment of New Jersey's legislators is that limiting the issuance of permits to carry a handgun in public to only those who can show a "justifiable need" will further its substantial interest in <u>public safety</u>. **Drake v. Filko, 724 F. 3d 426 - Court of Appeals, 3rd**

Circuit 2013 at 437, 438, 439, 453, 457. "A right deemed **fundamental** carries with it an implicit and inherent recognition of its necessity to a free people. States have no compelling (or even legitimate) interest in depriving people of their constitutional rights, and the State cannot point to the impact of its practice – the suppression of constitutional rights – as its interest". See **Simon & Schuster, Inc. v. N.Y. State Crime Victims Bd., 502 U.S. 105, 120 (1991)**. "The Government may not prohibit or control the conduct of a person for reasons that infringe upon constitutionally guaranteed freedoms", **Smith v. United States, 502 F. 2d 512 - Court of Appeals, 5th Circuit 1974 at 516**.

"The State cannot choose means that unnecessarily burden or restrict constitutionally protected activity", **Dunn v. Blumstein, 405 US 330 - Supreme Court 1972, at 343**. "The Constitution does not permit **fundamental** civil rights to be abridged by public safety fears". See, e.g., **Near v. Minnesota, 283 U.S. 697, 721-22 (1931)**. It is well settled that, quite apart from the guarantee of equal protection, if a law "impinges upon a **fundamental right** explicitly or implicitly secured by the Constitution [it] is presumptively unconstitutional." Mobile v. Bolden, 446 U. S. 55, 76 (plurality opinion). **Harris v. McRae, 448 US 297 - Supreme Court 1980 at 312.** "Laws which plainly forbid conduct which is constitutionally within the power of the State to forbid but also restrict constitutionally protected conduct may be void either on their face or merely as applied", **Coates v. Cincinnati, 402 US 611 - Supreme Court 1971 at 617.**

## 4. THE INDIVIDUAL FUNDAMENTAL AND INALIENABLE RIGHT TO BEAR ARMS FOR THE PURPOSE OF SELF-DEFENSE EXTENDS BEYOND THE HOME.

"The understanding that the Second Amendment gave freed blacks the right to keep and bear arms was reflected in congressional discussion of the bill, with even an opponent of it saying that the founding generation "**were for every man bearing his arms about him** and keeping them in his house, his castle, for his own defense." " It was plainly the understanding in the post-Civil War Congress that the Second Amendment protected an individual right to use arms for self-defense", **District of Columbia v. Heller, 128 S. Ct. 2783 - Supreme Court 2008 at 2810-2811**.

The Supreme Court in Dred Scott v. Sandford stated if African Americans were considered U.S. citizens, "It would give to persons of the negro race, who were recognized as citizens in any one State of the Union, the right...to keep and carry arms wherever they went...". **Dred Scott v. Sandford, 60 US 393 - Supreme Court 1857 at 417. McDonald v. City of Chicago, Ill., 130 S. Ct. 3020 - Supreme Court 2010 at 3068.**

## 5. NJ PERMIT AND LICENSING LAWS OPERATES AS A PRIOR RESTRAINT AND VIOLATE THE FIRST AMENDMENT FREEDOM OF EXPRESSION

The Pledge of Allegiance of the United States is an **expression** of allegiance to the Flag of the United States and the republic of the United States of America, originally composed by Francis Bellamy in 1892 and formally adopted by Congress as the pledge in 1942, **Elk Grove Unified Sch. Dist. v. Newdow, 542 U.S. 1, 6-7, 124 S. Ct. 2301, 2305, 159 L. Ed. 2d 98, 105-06 (2004)**.

Just as producing film is a protected expression of art, the right to keep and bear arms is an expression illustrating the natural rights of self-defense, resistance to oppression, and the civic duty to act in concert in defense of the state. "all men are born equally free and independent, and have certain natural, inherent and inalienable rights," including the "right to worship Almighty God according to the dictates of their own consciences" and the "right to bear arms for the defence of themselves **and the state**", **McDonald v. City of Chicago, Ill., 130 S. Ct. 3020 - Supreme Court 2010 at 3066.** When the people assemble and bear arms in defense of the state it is an **expression** of loyalty and togetherness which is "one nation, under god, indivisible, with liberty, and justice for all", N.J.S.A. 18A:36-3. Prior restraints violating freedom of expression are unconstitutional under the first amendment, **Near v. Minnesota, 283 U.S. 697, 721-22 (1931).** "The First Amendment contains the freedom-of-speech guarantee that the people ratified, which included exceptions for obscenity, libel, and disclosure of state secrets, but not for the expression of extremely unpopular and wrong-headed views. The Second Amendment is no different"..."A constitutional guarantee subject to future judges' assessments of its usefulness is no constitutional guarantee at all. Constitutional rights are enshrined with the scope they were understood to have when the people adopted them, whether or not future legislatures or (yes) even future judges think that scope too broad", **District of Columbia v. Heller, 128 S. Ct. 2783 - Supreme Court 2008 at 2821.** The State have the burden of proving that [keeping and bearing arms in defense of the state] is an expression unprotected by the Constitution, **Freedman v. Maryland, 380 U.S. 51 (1965) at 58.**

## 6. THE DISTRICT COURT MUST APPLY STRICT SCRUTINY AGAINST NJ FIREARM PERMIT AND LICENSING LAWS

In order to convince the court to apply strict scrutiny, it is necessary to show that the state's action was "motivated by a discriminatory" purpose. "Legislative history," of course, refers to the pre-enactment statements of those who drafted or voted for a law; it is considered persuasive by some, not because they reflect the general understanding of the disputed terms, but

because the legislators who heard or read those statements presumably voted with that understanding.

The history of the permit and license scheme around the <u>United States</u> has always related to <u>slaves and African Americans</u>. "The Supreme Court recognizes race, national origin, religion and alienage as suspect classes; it therefore analyzes any government action that discriminates against these classes under <u>strict scrutiny</u>". **Hirabayashi v. United States, 320 U.S. 81 [5] and Korematsu v. United States, 323 U.S. 214 (1944); Adarand Constructors v. Peña, 515 U.S. 200 (1995); see United States v. Marzzarella, 614 F.3d 85, 89 (3d Cir. 2010)**. "Strict scrutiny" was required because the classification created by the statute infringed upon a <u>fundamental right,</u> **Zablocki v. Redhail, 434 US 374 - Supreme Court 1978 at 381.**

The long presumptive history regarding the regulation of firearms and license is **only** traced to <u>slaves and black African Americans</u>. After the end of slavery and the ratification of the fourteenth amendment, in order to keep firearms out the hands of <u>blacks,</u> New Jersey, and many other states, basically turned **all citizens,** black and white, <u>into slaves</u> by requiring permits and licenses to obtain firearms. "It is the duty of the courts to be watchful for constitutional rights of the citizen, against any <u>stealthy encroachments</u> thereon." **Boyd v. U.S., 116 US 616, 635, (1885) at 635.** "A Collection of All the Acts of Assembly, Now in Force, in the Colony of Virginia 596 (1733) ("Free Negros, Mulattos, or Indians, and Owners of Slaves, seated at Frontier Plantations, may <u>obtain Licence</u> from a Justice of Peace, <u>for keeping Arms,</u> & c."), **District of Columbia v. Heller, 128 S. Ct. 2783 - Supreme Court 2008 at footnote 7.** ("the late slaveholding States" had enacted laws "depriving persons of African descent of privileges which are <u>essential to freemen</u>," including "prohibit[ing] any negro or mulatto from having <u>fire-arms</u>"... to "[m]ake a colored man a citizen of the United States" would <u>guarantee</u> to him, inter alia, "a defined status . . . a right to defend himself and his wife and children; <u>a right to bear arms</u>"). **McDonald v. City of Chicago, Ill., 130 S. Ct. 3020 - Supreme Court 2010 at 3075.** In McDonald the City argued, "Article IV, § 2, prohibits only state discrimination with respect to those rights it covers, but does not deprive States of the power to deny those rights to all citizens equally". **Id at 3075.** The Supreme Court **rejected** this argument as "<u>implausible</u>", **Id at 3077.**

"Many legislatures amended their laws prohibiting slaves from carrying firearms to apply the prohibition to <u>free blacks as well</u>". **McDonald v. City of Chicago, Ill., 130 S. Ct. 3020 - Supreme Court 2010 at 3081.** Many states such as Florida, Kentucky, Louisiana, Maryland, Mississippi, Missouri, **New Jersey**, North Carolina, South Carolina, Tennessee, Texas, and Virginia took arms and firearms away from slaves and freedmen by enforcing a "<u>Black Code</u>", (prohibiting slaves from using firearms unless they were authorized by their master to hunt within the boundaries of his plantation); Act of Dec. 18, 1819, 1819 S.C. Acts pp. 29, 31 (same);

An Act Concerning Slaves, § 6, 1840 Tex. Laws pp. 42-43 (making it unlawful for "any slave to own firearms of any description"), **McDonald v. City of Chicago, Ill., 130 S. Ct. 3020 - Supreme Court 2010 at footnote 18.**

"Many early 19th-century state cases indicated that the Second Amendment right to bear arms was an individual right unconnected to militia service, though subject to certain restrictions". **District of Columbia v. Heller, 128 S. Ct. 2783 - Supreme Court 2008 at 2808.** The certain restrictions only applied to <u>Blacks</u>. Blacks were routinely disarmed by Southern States after the Civil War. Those who opposed these injustices frequently stated that they infringed blacks' constitutional right to keep and bear arms. **District of Columbia v. Heller, 128 S. Ct. 2783 - Supreme Court 2008 at 2810.** "Shortly after Congress approved the Fourteenth Amendment — contained numerous examples of <u>such abuses</u>". **McDonald v. City of Chicago, Ill., 130 S. Ct. 3020 - Supreme Court 2010 at 3039.** In debating the Civil Rights Act of 1871, Congress routinely referred to the right to keep and bear arms and decried the continued disarmament of blacks, **McDonald v. City of Chicago, Ill., 130 S. Ct. 3020 - Supreme Court 2010 at 3042.**

As Representative Thaddeus Stevens is reported to have said, "[w]hen it was first proposed to free the slaves, and arm the blacks, did not half the nation tremble? **McDonald v. City of Chicago, Ill., 130 S. Ct. 3020 - Supreme Court 2010 at 3081-3082.** Some States formally prohibited blacks from possessing firearms. Ante, at 3038-3039 (quoting 1865 Miss. Laws p. 165, § 1, reprinted in 1 Fleming 289). Others **enacted legislation** prohibiting blacks from carrying firearms <u>without a license, a restriction not imposed on whites,</u> **McDonald v. City of Chicago, Ill., 130 S. Ct. 3020 - Supreme Court 2010 at 3082.**

<u>All states</u> around the country <u>fully understood</u> that the second amendment was a <u>fundamental right</u> to keep and bear arms at home and in public **without** a need for a permit or license. "Keep arms" was simply a common way of referring to possessing arms, <u>for militiamen and everyone else.</u> **District of Columbia v. Heller, 128 S. Ct. 2783 - Supreme Court 2008 at 2792.** The following states although they <u>barred black Citizens</u> from owning arms and firearms, did not infringe the right of the "white Citizens" to keep and bear arms at home, or in the public.

In <u>Florida,</u> advised by the Florida governor and attorney general as well as by the Freedmen's Bureau that it could not constitutionally revoke Black people's right to bear arms, the Florida legislature refused to repeal this part of the Black Codes. Florida made it the "duty" of white citizen "patrol[s] to search negro houses or other suspected places, for fire arms." Act of Feb. 17, 1833, ch. 671, 1833 Fla. Acts pp. 26, 30. If they found any firearms, the patrols were to take the offending slave or free black "to the nearest justice of the peace," whereupon he would be "severely punished" by "whipping on the bare back, not exceeding thirty-nine lashes," unless

he could give a "plain and satisfactory" explanation of how he came to possess the gun. **McDonald v. City of Chicago, Ill., 130 S. Ct. 3020 - Supreme Court 2010 at 3081.**

In Kentucky, "[T]he civil law [of Kentucky] prohibits the colored man from bearing arms. ... Their arms are taken from them by the civil authorities. ... Thus, the right of the people to keep and bear arms as provided in the Constitution is infringed." **District of Columbia v. Heller, 128 S. Ct. 2783 - Supreme Court 2008 at 2810.**

In Louisiana, the court in United States v. Cruikshank vacated the convictions of members of a white mob for depriving blacks of their right to keep and bear arms, **District of Columbia v. Heller, 128 S. Ct. 2783 - Supreme Court 2008 at 2812.**

In Maryland, Waters v. State, 1 Gill 302, 309 (Md.1843) (because free blacks were treated as a "dangerous population," "laws have been passed to prevent their migration into this State; to make it unlawful for them to bear arms; to guard even their religious assemblages with peculiar watchfulness"). **District of Columbia v. Heller, 128 S. Ct. 2783 - Supreme Court 2008 at 2808.**

In Mississippi, "In Mississippi rebel State forces, men who were in the rebel armies, are traversing the State, visiting the freedmen, disarming them, perpetrating murders and outrages upon them; and the same things are done in other sections of the country." 39th Cong. Globe 40 (1865). **McDonald v. City of Chicago, Ill., 130 S. Ct. 3020 - Supreme Court 2010 at 3039.**

In Missouri, Dred Scott v. Sandford stated if African Americans were considered U.S. citizens, "It would give to persons of the negro race, who were recognized as citizens in any one State of the Union, the right...to keep and carry arms wherever they went…and endangering the peace and safety of the State". **Dred Scott v. Sandford, 60 US 393 - Supreme Court 1857 at 417. McDonald v. City of Chicago, Ill., 130 S. Ct. 3020 - Supreme Court 2010 at 3068.**

In North Carolina, codified a right to bear arms in 1776: "That the people have a right to bear arms, for the defence of the State. **District of Columbia v. Heller, 128 S. Ct. 2783 - Supreme Court 2008 at 2802**. But North Carolina in State v. Newsom, 27 N. C. 250 (1844) stated "an act to prevent free persons of color from carrying fire arms," is not unconstitutional".

In South Carolina, "in some parts of [South Carolina], armed parties are, without proper authority, engaged in seizing all fire-arms found in the hands of the freemen. Such conduct is in clear and direct violation of their personal rights as guaranteed by the Constitution of the United States, which declares that `the right of the people to keep and bear arms shall not be infringed.' **District of Columbia v. Heller, 128 S. Ct. 2783 - Supreme Court 2008 at 2810.** The "arming of the Negro militias met with especially fierce resistance in South Carolina .... The sight of organized, armed freedmen incensed opponents of Reconstruction and led to an intensified campaign of Klan terror. Leading members of the Negro militia were beaten or lynched and their

weapons stolen." **District of Columbia v. Heller, 128 S. Ct. 2783 - Supreme Court 2008 at 2841.**

In Virginia, "A Virginia case in 1824 holding that the Constitution did not extend to free blacks explained that "numerous restrictions imposed on [blacks] in our Statute Book, many of which are inconsistent with the letter and spirit of the Constitution, both of this State and of the United States as respects the free whites, demonstrate that, here, those instruments have not been considered to extend equally to both classes of our population. We will only instance the restriction upon the migration of free blacks into this State, and upon their right to bear arms." Aldridge v. Commonwealth, 4 Va. 447, 2 Va. Cas. 447, 449 (Gen.Ct.)". **District of Columbia v. Heller, 128 S. Ct. 2783 - Supreme Court 2008 at 2808**. In any case, it is clear to us that Aldridge's allusion to the existing Virginia "restriction" upon the right of free blacks "to bear arms" could only have referred to "laws prohibiting blacks from keeping weapons," Siegel, supra, at 497-498. **District of Columbia v. Heller, 128 S. Ct. 2783 - Supreme Court 2008 at 2808 at footnote 21.**

In Tennessee, freedpeople had no legal status whatsoever, and local jurisdictions often filled the void with extremely harsh Black Codes. The legislature passed two laws on May 17, 1865; one to "Punish all Armed Prowlers, Guerilla, Brigands, and Highway Robbers"; the other to authorize capital punishment for thefts, burglary, and arson. These laws were targeted at Blacks and enforced disproportionately against Blacks.

In Texas, blacks were not allowed to vote, hold office, sit on juries, serve in local militia, or carry guns on plantations.

"Today, no less than 50 years ago, the solution to the problems growing out of race relations "cannot be promoted by depriving citizens of their constitutional rights and privileges," Buchanan v. Warley, supra, 245 U. S., at 80-81, **Watson v. Memphis, 373 US 526 - Supreme Court 1963 at 539**. As proven herein, NJ permit and licensing laws are derived from racism and discrimination, and are facially unconstitutional and violates 1st, 2nd, 4th, 5th, 8th, 9th, 10th, and 14th amendment of the United States Constitution and must be struck down. A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." **Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).**

Respectfully submitted,

Marc Stephens
Plaintiff
201-598-6268

**Marc A. Stephens**

CLERK COURT
U.S. DISTRICT COURT
DISTRICT OF NEW JERSEY
RECEIVED

271 Rosemont Place, Englewood, NJ 07631, 201-598-6268

2015 SEP 28  P 1: 4

September 26, 2015

Clerk's Office
New Jersey District Court – Newark
50 Walnut Street
Newark, NJ 07101

# NOTICE
# TWO SEPARATE CASES TO FILE

**RE: Stephens, et al vs City of Englewood, et al – Case# 2:14-cv-05362-WJM-MF, and Stephens v Jerejian - Case# 2:14-cv-06688-WJM-MF**

Dear Clerk,

Please file all documents attention to Judge Martini.  Enclosed please find:

1. Motion for Reconsideration, **Case# 2:14-cv-06688-WJM-MF**
2. Response to Defendant City of Englewood, **Case# 2:14-cv-05362-WJM-MF**

Respectfully Submitted,

Tyrone Stephens
Plaintiff, pro se

Marc Stephens
Plaintiff, pro se

